(No. 6086.    April 23, 1934.)

EARL E. GARRITY et al., Appellants, v. BOARD OF COUNTY COMMISSIONERS OF OWYHEE COUNTY, IDAHO,  Respondent.

[34 Pac. (2d) 949.]

William Healy, for Appellants.

L. N. Smith and Oppenheim & Lampert, for Respondent.

Richards & Haga, as *Amici Curiae.*

HOLDEN, J.—On the second Monday of January, 1932, the Board of County Commissioners of Owyhee county convened to and considered the preliminary budget of that county for the fiscal year commencing on that day, submitted to the board by the budget officer of the county, and agreed upon a tentative amount to be allowed and appropriated for the then current fiscal year to each office, department, service, agency and institution. Notice of the preliminary budget and amount so tentatively appropriated was published stating that the board would meet on the second Monday of February, next succeeding, for the purpose of considering and fixing a final budget and making appropriations to each office, department, service, agency and institution for the then current fiscal year, at which time any taxpayer might appear and be heard upon any part or parts of the tentative budget. The board met on the second Monday of February and, apparently without objection, fixed and determined the amount of the budget for each office, department, service, agency and institution of the county

for the then current fiscal year, and by resolution adopted the budget so finally fixed and agreed upon.

For the current expense fund for the fiscal year commencing on the second Monday of January, 1932, the board budgeted $87,821.50, and for the road and bridge fund it budgeted $23,700, and for the warrant redemption fund, the sum of $38,048.02.

The assessed valuation of real and personal property in the county, subject to taxation for the fiscal year, amounted to $3,804,756. The total possible revenue from the tax levy made on the second Monday of September, 1932, for the current expense fund was, $22,828.62, and the total possible revenue from the tax levy made for the road and bridge fund was $11,413.81. During the then fiscal year revenues accrued to the current expense fund, from sources other than taxes, in the sum of $4,762.76, giving that fund a possible total of $27,591.38, and revenues also accrued to the road and bridge fund, from sources other than taxes, in the sum of $529.22, giving that fund a possible total of $11,943.03. The board authorized the issuance of and warrants were drawn upon the current expense fund, during the said fiscal year, amounting to $60,846.44, and it also authorized the issuance of and warrants were drawn upon the road and bridge fund, amounting to $13,390.24.

During the last quarter of the fiscal year ending on the second Monday of January, 1933, certain ordinary expenses of county officers necessary to the discharge of their duties, and ordinary expenses necessary for the support and burial of indigents, and ordinary and necessary expenses for election and other supplies, and miscellaneous expenses in the conduct of the county government, were incurred against the current expense fund, over and above the expenses for which warrants were issued, amounting to the sum of $2,921.93, also certain ordinary and necessary expenses for labor and material for the upkeep and maintenance of roads and bridges, were incurred against the road and bridge fund, over and above the expenses for which warrants were issued, amounting to the sum of $933.47, as well

as a premium for compensation insurance covering county employees, amounting to the sum of $230.55.

On the second Monday of January, 1933, the board under. whose administration the said expenses were incurred, was succeeded by a new board. Claims for such expenses, including the claim of the State Insurance Fund for said premium, were presented to the new board for allowance, and disallowed, ''being advised by the Prosecuting Attorney, that if they (the members of the new board) ordered warrants drawn in payment of said claims, they would be personally liable on their personal bonds for all of said warrants drawn, for the reason, that there was not enough revenue accrued to said funds, as provided by statute, in payment of same.''

The claims so disallowed by the new board, added to what had already been expended during the fiscal year 1932, would not have been in excess of the budget appropriations for the current expense and road and bridge funds, for such fiscal year, but were in excess of the total revenues of said funds which could reasonably have been anticipated.

The claimants, appellants here, and the State Insurance Fund, whose claim for said compensation insurance premium was also disallowed by the board, prosecuted separate appeals to the district court for Owyhee county, from the order of the board disallowing all of the claims, it being stipulated by all of the parties to both appeals that the appeal of the State Insurance Fund should take the same course in the district court and be determined in accordance with the judgment of that court in the appeal of Garrity and others, appellants herein. That court held in the appeal of this case, that the board could not lawfully have allowed the said claims or ordered warrants drawn in payment of the same, under section 30–1517, I. C. A., and entered judgment affirming the order of the board, and accordingly and under said stipulation, also entered judgment in the appeal of the State Insurance Fund, affirming the order of the board disallowing its claim for the said sum of $230.55. From such judgments separate appeals by Garrity and others,

appellants herein, and the State Insurance Fund, were taken to this court, it being stipulated that the appeal in the companion case of the State Insurance Fund, be submitted on the record and briefs in this case.

Appellants specify and rely upon the following alleged errors for a reversal of the judgment of the trial court:

"1. The court erred in affirming the order of the Board disallowing these claims. 2. The court erred in finding that the anticipated revenues of the county were insufficient to meet its expenses. 3. The court erred in concluding as a matter of law that Section 30–1517 applies to ordinary and necessary expenses and those which are in effect involuntary. 4. The court erred in affirming the order of the Board disallowing the actual and necessary expenses of county officers. 5. The court erred in affirming the order of the Board disallowing the claim of appellant State Insurance Fund."

In our view of the case, but two questions are presented for determination. First: May a warrant redemption fund be used to pay necessary and ordinary expenses of county government? And, second: May a board of county commissioners allow a claim for either a voluntary or mandatory or necessary and ordinary expense, incurred or contracted in the conduct of county government, and order a warrant drawn therefor upon the proper fund, in excess of the levy made for that fund, plus accrued revenues, without becoming liable both personally and upon their official bonds?

The following are the sections of the state Constitution and statute directly bearing upon the first question to be determined: Section 15 of Article 7 reading as follows:

"Legislature to provide system of county finance.—The legislature shall provide by law, such a system of county finance, as shall cause the business of the several counties to be conducted on a cash basis. It shall also provide that whenever any county shall have any warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury, the county commissioners, in addition to

other taxes provided by law, shall levy a special tax, not to exceed ten mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of said warrants; and after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively out of said fund. All moneys in the county treasury at the end of each fiscal year, not needed for current expenses, shall be transferred to said redemption fund.''

Section 61–801, I. C. A., reading as follows:

''Annual state tax levy.—The board of county commissioners in each county in this state must meet on the second Monday of September in each year to ascertain the tax rate necessary to be levied on each $100 of the valuation of all the taxable property in the county for such year in order to raise the amount of state taxes apportioned to such county by the state board of equalization, and, likewise, the tax rate necessary to be levied for each of the several funds in order to meet the expenditures of such funds for the said year, and must, on or before the third Monday in September in said year, determine such tax rates and levy the same, with such percentage of increase as in the judgment of the said board may be necessary to counterbalance taxes unpaid on the second Monday of July in the succeeding year; provided, that no tax levy shall exceed the maximum authorized therefor, or be less than the minimum prescribed therefor, by the laws of this state: and, provided further, that the total of all such levies must be within the limits prescribed by the laws of this state.''

And section 61–807, I. C. A., reading as follows:

''Annual county tax levy—Warrant redemption fund.— Upon the same property and for the same year the said board must levy a tax for the redemption of outstanding county warrants issued prior to the second Monday of April in said year, to be collected and paid into the county treasury and apportioned to the county warrant redemption fund, which levy must be sufficient for the redemption of

all such outstanding county warrants before the second Monday of April in the succeeding year, unless the amount of such outstanding warrants exceeds the amount that would be raised by a levy of 100 cents on each $100.00 of such assessed valuation, in which case the board must annually levy a tax of 100 cents on each $100.00 of such assessed valuation for the redemption of such'outstanding warrants.''

By section 15, *supra,* the legislature is commanded to ''provide by law, such a system of county finance, as shall cause the business of the several counties to be conducted on a cash basis,'' and it is further commanded to ''provide that whenever any county shall have any warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury,'' that ''the county commissioners, in addition to other taxes provided by law, shall levy a special tax, not to exceed ten mills on the dollar, of taxable property, as shown by the last preceding assessment, for the creation of a special fund for the redemption of said warrants,'' and that, ''after the levy of such special tax, all warrants issued before such levy, shall be paid exclusively out of said fund.''

Section 61–801, *supra,* fixes the time when boards of county commissioners must meet to determine ''the tax rate necessary to be levied for each of the several funds in order to meet the expenditures of such funds,'' and ''levy the same,'' and section 61–807, *supra,* provides that boards must also ''levy a tax for the redemption of outstanding county warrants issued prior to the second Monday . . . . which levy must be sufficient for the redemption of all such outstanding warrants before the second Monday of April of the succeeding year, unless the amount of such outstanding warrants exceeds the amount that would be raised by a levy of 100 cents on each $100.00 of such assessed valuation in which case the board must annually levy a tax of 100 cents on each $100.00 of such assessed valuation for the redemption of such outstanding warrants.''

It is argued by appellants that that part of section 15, *supra,* reading that ''after the levy of such special tax, all

warrants issued before such levy, shall be paid exclusively out of said fund,'' is mandatory and self-executing. The legislature is directed by said section, as above stated, to enact such legislation as shall be necessary to enable the several counties to conduct their business on a cash basis, and to that end section 15, *supra*, further commands that ''it (the legislature) shall also provide that whenever any county shall have any warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury, the county commissioners, in addition to other taxes provided by law, shall levy a special tax . . . . for the creation of a special fund for the redemption of said warrants. . . . . '' It is clear these provisions are not self-executing. And bearing in mind that our Constitution is not a grant of, but is a limitation on, the powers of the state, and that our legislature may provide for that which is not prohibited (*Lloyd Corporation v. Bannock County et al.,* 53 Ida. 478, 25 Pac. (2d) 217), and also bearing in mind that said section 15 in no way prohibits the legislature from providing, as it has by section 61–807, *supra*, what warrants may be redeemed from the warrant redemption fund, so long as they shall be warrants issued before the warrant, redemption levy is made, the legislature, in the enactment of section 61–807, was well within the limit fixed by the Constitution. Both said section 15 and said section 61–807, *supra*, contemplate that the warrant redemption fund shall be used exclusively for the redemption of outstanding warrants, and that such fund shall not be converted into a ''current expense fund'' for the payment of current ordinary and necessary expenses of county government.

We now come to the most serious and difficult question presented on this appeal: May a board of county commissioners allow a claim for either a voluntary or mandatory or necessary and ordinary expense, incurred or contracted in the conduct of county government, and order a warrant drawn therefor upon the proper fund, for the payment of the claim, in excess of the levy made for that

fund, plus accrued revenues, without becoming liable both personally and upon their official bonds?

At the threshold of the discussion of that question it may be stated that it is stipulated that the claims of appellants were actually incurred and regularly presented and that they "are on account of ordinary and necessary expenses authorized by the general laws of the state," and also that respondent board adopted a budget for the county as required by statute, and that the total expense incurred during 1932, including the rejected claims of appellants, in no instance exceeded the appropriation therefor in the budget.

The action of the respondent board rejecting the claims was based upon an understanding of the members of the board that if they allowed the claims they would thereby become liable, both personally and on their official bonds, under the provisions of section 30–1517, I. C. A.

Section 30–1517, I. C. A., reads as follows:

"Limitation of approval of claims in excess of levies.— All county, town, municipal, road and school district officials who issue orders or warrants or approve bills or order county warrants to be drawn in excess of the levies made for the different county, town, municipal, road or school district funds shall be liable, both personally and on their official bonds for the payment of any such excess."

It is contended by counsel *amici curiae* that the above-quoted section is in direct conflict with the provisions of section 3, article 8 of our state Constitution, because it is argued that section 30–1517, *supra*, declares void what the Constitution declares shall be valid, in this: That section 3, *supra*, provides that it "shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state," and that, therefore, the legislature could not, by the enactment of section 30–1517, *supra*, make a claim for "ordinary and necessary expenses authorized by the general laws of the state" void, which claim section 3 of article 8, of our state Constitution, makes valid.

Section 3 of article 8, reads as follows:

"Limitations on county and municipal indebtedness.—No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

In 1927 the legislature made the first serious attempt to provide a system of county finances having for its purpose placing the several counties of the state on a cash basis, in direct response to the mandate of section 15 of article 7, *supra*. From the experience obtained from the operation of the system of county finances provided for by earlier legislation, the legislature, in 1931, enacted a most comprehensive County Budget Law. The sole purpose of that County Budget Law is to provide such a "system of county finances" that the business of the several counties shall be conducted on a *balanced budget,* and on sound business principles, and as far as practicable, on the same basis that a successful private business is conducted, and that is likewise the purpose of section 15, *supra*. So that we find the Constitution and the County Budget Law in complete harmony. And to that end the County Budget Law, after making ample provisions for ascertaining probable revenues and expenses, and the appropriation necessary to be made to each office, department, service, agency and institution of a county for a given fiscal year, requires boards of county commissioners, after publication of the county

budget, and after opportunity to any taxpayer to object to any part of the proposed budget, to adopt a final budget, and then and "thereafter, at the time provided by law (between the second and third Mondays of the following September), the board of county commissioners must fix the levies necessary to raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, including available surplus, as determined by the board . . . . '' The county budget embraces every form of expense, voluntary, mandatory, and necessary and ordinary. Necessarily, after adopting a final budget, the next important and essential thing to be done is to make sufficient levies to raise the total amount of the appropriations. If either one is more important than the other, it would seem that making sufficient levies is the more important. When a board, then, makes appropriations for the conduct of county government, under the County Budget Law, and then later, and in September, fails to make sufficient levies to raise the money necessary to meet the appropriations, as required by law, and the board making the appropriations, passes out of office and is succeeded by a new board, and claims for mandatory and necessary and ordinary expenses of the county during the last quarter of the administration of the old board, are presented to the new board for allowance, as in the case at bar, may the new board allow the claims without incurring liability? That depends upon the constitutionality of section 30-1517, *supra*. Keeping in mind that it is the purpose of both the Constitution and the County Budget Law to place and keep counties on a cash basis, by means of a *balanced budget*, and that to accomplish that purpose expenditures must be kept within income, may the legislature provide by appropriate legislation that all county officials who issue orders or warrants or approve bills or order county warrants to be drawn in excess of the levies made (plus accrued revenues) for the different funds, shall be liable, both personally and upon their official bonds? It must be conceded that such legisla-

tion would be a most effective aid in the accomplishment of the common purpose of the Constitution and statute.

This court held in *Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529, that "in matters of taxation the legislature possesses plenary power, except as such power may be limited or restricted by the constitution. It is sufficient warrant for the exercise of this power in a given instance, if there be found in the constitution no prohibition against what the legislature has attempted to do."

And later and in *State v. Nelson,* 36 Ida. 713, 213 Pac. 358, this court held that "the power of the legislature with reference to all matters of taxation, as well as of legislation generally, is plenary, except as limited by organic law." (See, also, *Lloyd Corp. v. Bannock County,* 53 Ida. 478, 25 Pac. (2d) 217.)

An examination of our Constitution discloses that it in no way, either expressly or impliedly, prohibits the legislature from enacting legislation making officials of a county "who issue orders or warrants or approve bills or order county warrants to be drawn in excess of the levies made for the different county . . . . funds . . . . liable both personally and on their official bonds. . . . . "

To leave county officials free to continue to allow bills and draw warrants upon a fund in excess of the levy made for that fund, plus accrued revenues, would defeat the very purpose of both the Constitution and the County Budget Law.

But counsel *amici curiae* contend that the County Budget Law (chap. 12, I. C. A.), enacted in 1931, repealed section 30–1517, *supra.* It is argued that the act (County Budget Law) "is most complete and it does not limit the sources from which bills shall be paid to *taxes levied,* as does section 30–1517"; that "the limit of expenditures under section 30–1207 is not the *levies* made but it is the *budget appropriations* which have been established with the greatest care after public hearings thereon"; that "these appropriations become the standard or guide in determining the amount of warrants that may be issued and obligations

that may be incurred"; and that the penalties provided by section 30–1207, I. C. A., substitute the penalties fixed by section 30–1517, *supra.*

Section 30–1205, I. C. A., first provides for a hearing upon the budget appropriations and for the adoption of a final budget. It then provides that, "thereafter, at the time provided by law, the board of county commissioners shall fix the levies necessary to raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, including available surplus, as determined by the board. . . . . ''

Section 30–1207, *supra,* provides that "expenditures made, liabilities incurred or warrants issued in excess of any of the budget appropriations, or as revised by transfer as herein provided, shall not be a liability of the county, but the official making or incurring such liability, expenditure, or issuing such warrant, shall be liable therefor personally and upon his official bond . . . . ''

If county commissioners made levies sufficient "to raise the amount of expenditures as determined by the adopted budget," less total revenues from sources other than taxation, and any available surplus, as required by section 30–1205, *supra,* then revenues would equal appropriations, at least so far as it would be possible by human foresight for any board to provide revenues equal to appropriations. And if that duty is performed by boards, and expenditures and revenues thus brought into balance, counties are given the long and much to be desired *balanced budget.* After requiring sufficient levies to be made, it is then provided by section 30–1207, *supra,* that any county officer who incurs a liability, approves a claim or issues a warrant, in excess of the budget appropriations, shall be liable both personally and upon his official bond, making it clear that it was the intention of the legislature, that after a county budget is so balanced, any county official who puts it out of balance by incurring a liability, approving a claim or issuing a warrant, as above stated, shall be liable. But county commissioners do not always make sufficient levies, as

the case at bar most conclusively demonstrates. And if and when a board fails to perform the duty imposed upon it to make sufficient levies, and thus *provide* the *required balanced budget,* neither that board nor a new board may allow a claim or order a warrant drawn in excess of the levies actually made, plus accrued revenues, without violating the provisions of section 30–1517, *supra.*

It is evident that section 30–1517, *supra,* applies to a case where a board fails to make sufficient levies to meet appropriations, and thus provide a balanced budget, and claims are, nevertheless, presented to it for allowance in excess of the levies actually made, plus accrued revenues, while section 30–1207, *supra,* applies to a case where a board performs the duty imposed upon it by law, and provides a balanced budget, but notwithstanding that, some county official incurs a liability, approves a claim or issues a warrant in excess of that balanced budget; and therefore, we conclude that section 30–1207, *supra,* does not repeal section 30–1517, *supra.*

It is contended, in effect, that section 30–1517, *supra,* invalidates all claims for mandatory, as well as necessary and ordinary expenses of county government, and that under the proviso of section 3 of article 8, *supra,* all such claims are valid and binding obligations, and that the legislature cannot so nullify the Constitution. In determining whether section 30–1517, *supra,* has that effect, the purpose of the County Budget Law and of that statute must not be lost sight of. The purpose of the County Budget Law, as hereinbefore pointed out, is to give the several counties of the state a *balanced budget,* in order that expenditures shall not exceed revenues, and to that end boards are enjoined to make sufficient levies to meet appropriations, and then and to further assure a *balanced budget,* ample provisions are made for meeting emergency expenses, all forming parts of a well planned county financial program. Under our Constitution, the legislature not only has the power, but it is expressly charged by section 15 of article 7 to provide such a system of county finances as shall cause the business of the counties to be conducted on a cash basis; in other words, to provide by law for a balanced budget.

It must follow, then, that the legislature may, after providing for a balanced budget, not being prohibited by organic law from doing so, also place about it such safeguards as shall be reasonably necessary to accomplish the object of the legislature in providing for the *balanced budget*. By the enactment of section 30-1517, *supra*, the legislature did not, either expressly or impliedly, fix what shall, or shall not, constitute a necessary or ordinary expense of county government, or a valid and binding obligation against a county. That section merely and only makes all county officials liable both personally and on their official bonds, who issue orders or warrants or approve bills in excess of the levies made for the county, plus accrued revenues. To hold that the legislature cannot safeguard any system of county finances which it may provide, by the enactment of a statute like section 30-1517, *supra*, might amount to a nullification of the Constitution by a decision of this court, because it would be useless for the legislature to provide a system of county finances, if it did not also possess the power to enact legislation reasonably necessary to enforce the law providing for the system or program.

The question as to whether, under the proviso of section 3 of article 8, *supra*, to the effect that "this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state," the claims of appellants are valid and binding obligations of the respondent, which it can be compelled to pay, is not before this court. A court is never justified, it has been well said, in passing upon a question not necessary to a decision of the matter before it, and will particularly "avoid the consideration of constitutional questions except when forced on them in forms of procedure permitting due argument and deliberation." (Bishop on the Written Laws, sec. 35, p. 33; *Potter v. Furnish*, 46 Mont. 391, 128 Pac. 542.)

And consequently, we do not deem it necessary to discuss the contentions made by both counsel *amici curiae* and appellants bearing on that question, or the cases cited in support of the contentions.

■■ Turning now to the contention of appellants that the order of the respondent board fixing the budget is an appealable order, and that if the budget itself was excessive, the remedy was by appeal and that that remedy is exclusive. From the cases cited in support of the contention, we understand that appellants refer to appeals provided for by section 30–1108, I. C. A. It is wholly immaterial to a decision of the questions presented to this court in the case at bar, as to whether an appeal does, or does not, lie, from an order of the board fixing the final budget, because as hereinbefore stated, the serious and vital question presented on this appeal is, may a board of county commissioners allow a claim for either a voluntary or mandatory or necessary and ordinary expense, incurred or contracted in the conduct of the county government, and order a warrant drawn therefor upon the proper fund, for the payment of the claim, in excess of the levy made for that fund, plus accrued revenues, without becoming liable both personally and upon their official bonds? And not as to whether an appeal lies from the order of the board fixing the 1932 budget of the respondent, nor as to whether that budget was, or is, excessive.

In conclusion, we hold that a warrant redemption fund cannot be used to pay necessary and ordinary expenses of county government; that section 30–1517, *supra,* is not in conflict with section 3 of article 8, *supra;* that section 30–1207, *supra,* does not repeal said section 30–1517, and that that section is constitutional and valid, and that the respondent board could not have allowed the claims of appellants without becoming liable as provided by section 30–1517, *supra.*

The judgment of the trial court is affirmed, with costs to respondent.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.

Petition for rehearing denied.