Argued June 10; Ballot title approved June 11, 1948

# RICHARDSON *v.* NEUNER

194 P. (2d) 989

*Bert S. Gooding,* of Portland, argued the cause for petitioner and appellant. With him on the brief were Stott & Gooding and Hart, Spencer, McCulloch & Rockwood, of Portland, John H. Carson, of Salem, and Raley, Kilkenny & Raley, of Pendleton.

*George Neuner,* Attorney General, of Salem, argued the cause for respondents. With him on the brief was Rex Kimmell, Deputy Attorney General.

Before Rossman, Chief Justice, and Kelly, Brand and Hay, Justices.

ROSSMAN, C. J.

This proceeding, which is authorized by § 81-2106, O. C. L. A., is an appeal by Mr. James J. Richardson, a resident of this state, from a ballot title written by

the attorney general for an initiative measure which a group of individuals propose to circulate for signatures.

Article IV, § 1, Constitution of Oregon, and §§ 81-2102 to 81-2120, O. C. L. A., make provision for the enactment of laws through the initiative process. Section 81-2106 provides that the attorney general shall write the ballot title for initiative measures; particularly it says:

" * * * The ballot title shall contain: (1) A distinctive short title in not exceeding ten words * * *. (2) A general title which may be distinct from the legislative title of the measure expressing in not more than 100 words the purpose of the measure. * * *."

The initiative measure for which the attorney general wrote the ballot title under attack follows:

"A BILL
For an act making pari-mutuel or other forms of betting on dog races unlawful, and providing penalties for violations.

Be It Enacted by the People of the State of Oregon:

Section 1. Notwithstanding any other provision of law, there shall be no pari-mutuel betting on dog races. Any individual, firm, person or corporation, or officer of any corporation, who operates dog races for pari-mutuel or any other form of betting, or who permits pari-mutuel or any other form of betting in connection therewith, on or off the premises, or engages in or accepts wagers thereon, shall be guilty of a misdemeanor and subject to fine and imprisonment. Upon repeated conviction he shall be subject to a fine of not less than $1,000.00 or more than $5,000.00 and to imprisonment of not more than five years for each repeated offense."

The short ballot title prepared by the attorney general and now under attack follows:

## "BILL DECLARING BETTING ON DOG RACES MISDEMEANOR"

The general ballot title, which Mr. Richardson also challenges, follows:

"Purpose: Notwithstanding any other provision of law, there shall be no pari-mutuel betting on dog races. Any individual, firm, person, corporation, officer of any corporation who operates dog races for pari-mutuel or any other form of betting in connection therewith, on or off the premises, or engages in or accepts wagers thereon, shall be guilty of a misdemeanor. Upon repeated conviction he shall be subject to a fine of not less than $1,000 nor more than $5,000 and to imprisonment of not more than five years for each repeated offense."

The brief filed by counsel for Mr. Richardson argues that the attorney general's title

"is not a 'true and impartial statement', as contemplated by the statute, but on the contrary it is confusing and misleading to the voters and will make the official ballot title an instrument of argument for the measure. Not only is the title an incomplete statement of the purpose and effect of the act, but the language is designed to imply arguments and to create prejudice and feeling in favor of the measure."

The appellant's brief suggests the following as proper for the measure:

"Short Title:

ANTI-DOG RACE BILL PROVIDING PENALTIES UP TO FIVE YEARS IMPRISONMENT.

"General Title:

Purpose: Prohibiting pari-mutuel or any form of betting on dog races operated or permitted to be operated for the purpose of betting on or off the premises and providing a penalty of not more than $500.00 fine or one year imprisonment for the first conviction and not less than $1,000.00 fine nor more than $5,000.00 fine and not more than five years imprisonment on convictions for each repeated offense."

The appellant's brief concludes as follows:

"We ask that this Court certify a ballot title and a form of initiative petition that fairly and accurately represents the measure."

 At the very outset the thought occurs that although § 81-2106 authorizes this appeal from action taken by the attorney general, the general nature of the duties performed by that official are not judicial, but executive. See Oregon Laws 1947, p. 556. Further, the issues presented by this appeal have as their subject matter the preparation of a ballot title, and, generally, the writing of ballot titles is not a judicial but a legislative or political function. Normally, appeals may be taken only from judicial bodies, and, generally, the doctrine of the separation of powers prohibits courts from infringing upon legislative functions.

The preparation of a ballot title, like the writing of a title for a legislative bill, requires construction and interpretation of the measure itself. The purpose of a ballot title is to guide and inform the voters in a future election. A court which writes a ballot title for an initiative measure knows that the title which it is writing will be printed upon the ballot if enough signatures are procured for the measure,

and may be accepted by the signers and voters as an index to the meaning of the measure. Should the measure become involved in political discussion, the ballot title may be invoked by partisans to settle some of the debates. Thus, in a measure, the court which wrote the title would find itself drawn into the controversy as counsel by the side served by the title. If the measure is adopted at the election and if it later becomes the subject of judicial controversy involving its true interpretation, the court may find that either the appellant or the respondent will wish to contest the interpretation manifested in the ballot title which the court wrote.

The judicial branch of our government is composed, not only of a given number of men, but, more important than the number, is the fact that the men must be impartial and must be able to decide controversies free from preconceived ideas. Normally, a venireman who has expressed a carefully thought-out opinion is disabled from serving as a juror. The history of the common law includes the constant effort of the judiciary to avoid all situations which impart the taint of bias and partisanship. Illustrations are Hayburn's Case, 2 Dallas 409, 1 L. Ed. 436, and In re School-Law Manual, 63 N. H. 574, 4 Atl. 878.

This court has entertained appeals of this kind, but no one has ever challenged the jurisdiction conferred by § 81-2106. Our decisions state fully the impartiality which the attorney general must display in writing ballot titles. With them we are satisfied.

■ Although the attorney general is an executive officer, § 81-2106 contemplates that when he writes a ballot title he perform the function in the same way

that a judicial officer performs his duties. The section of our laws just cited says:

" * * * In making such ballot title the attorney general shall to the best of his ability give a true and impartial statement of the purpose of the measure and in such language that the ballot title shall not be intentionally an argument or likely to create prejudice either for or against the measure."

The language just quoted, as well as other parts of § 81-2106, demands that when the attorney general writes a ballot title he act, not as an advocate, but in a quasi-judicial capacity. Since the attorney general acts judicially when he writes a ballot title, his action may properly be subjected to judicial scrutiny.

■ The courts have frequently determined how far they should go in reviewing action taken by administrative agencies which possess quasi-judicial powers but which perform duties outside of the scope of the judicial branch. Rate-making is an instance. Generally, they go no further than to determine whether the agency (1) acted impartially; (2) performed faithfully the duties delineated in the legislative acts which conferred jurisdiction upon it; (3) stayed within its jurisdiction; (4) committed no error of law; (5) exercised discretion judiciously and not capriciously; and (6) arrived at no conclusion which was clearly wrong.

■ We believe that § 81-2106 authorizes this court, upon appeal from a ballot title, to ascertain whether the attorney general acted in the manner indicated by the formulas to which we just adverted.

■ We have given careful heed to all matters addressed to us upon this appeal, but have become satisfied that the appeal discloses no error upon the part of the attorney general. It is our belief that the ballot titles prepared by that official should be certified to the secretary of state as proper. We so order.