**272 P.2d 707**

In re The PETITION OF IDAHO STATE FEDERATION OF LABOR (AFL), an unincorporated association, by Elmer F. McIntire, Executive Secretary thereof, and Fred H. McCabe, Chairman of the Legislative Committee thereof; IDAHO CONGRESS OF INDUSTRIAL ORGANIZATION (CIO), an unincorporated association, by Fred L. Garrett, Secretary-Treasurer of the Political Legislative Council thereof; and Elmer F. McINTIRE, Fred H. McCabe, and Fred L. Garrett, individually,

Petitioners-Plaintiffs,

To Appeal The Decision of the Attorney General of the State of Idaho Respecting The Ballot Title To A Proposed Initiative, Robert E. SMYLIE, Attorney General,

Defendant,

and

PEOPLES RIGHT TO WORK COMMITTEE, Inc., a corporation, by its President, Craig W. Johnson, and its Secretary-Treasurer, Keith H. Johnson,

Intervenor,

and

Craig W. JOHNSON and Keith H. Johnson, individually, and as signers of the original Right to Work Petition filed with the Honorable Secretary of State of the State of Idaho,

Proponents.

No. 8160.

Supreme Court of Idaho.

June 30, 1954.

Carver; McClenahan & Greenfield, Boise, for petitioners.

Robert E. Smylie, Atty. Gen., and Robert B. Hodges, Asst. Atty. Gen., Boise, for State of Idaho.

Ezra P. Monson, Blackfoot, for proponents.

**GIVENS, Justice.**

April 10, 1954, proponents filed with the Secretary of State a petition for an initiative measure, pursuant to Section 34–1801, I.C., signed by twenty residents of Blackfoot and Idaho Falls. (Copy of proposed initiative appended hereto.)

Compliant with Section 34–1809, I.C., the Attorney General provided and returned to the Secretary of State as a distinctive short title, "The Right to Work Initiative Proposal" and a long title which, as amended, is not questioned.

Patently "Initiative measure for or to" or other appropriate concluding preposition, is no more a part of the restrictive ten-word short title than "An Act" preceding a regular legislative statute is, though both are equally necessary for identification.

Thereafter, under Section 34–1809, I.C., petitioners herein, May 4, filed their petition, amended May 7, challenging said short title mainly because it lacked reference to membership or lack of membership in a labor union or organization, with further elaboration thereof, as the sine qua non of the proposed measure.

Section 34–1809, I.C., outlines no procedure or process for hearing such so-called appeal by this Court.

The principles announced in Roche v. Superior Court, 30 Cal.App. 255, 157 P. 830, 832, relative to Section 187, Cal.Code of Civil Procedure, identical with Section 1–1622, I.C., in connection with an election contest, as analogous, are applicable. The Court therein stated:

"Under section 187, Code of Civil Procedure, it devolves upon the court in such a case to adopt a suitable procedure which will furnish an opportunity for any interested person to appear at the hearing."

Section 7–208, I.C., authorizes shortening of the return time specified therein; hence, due to the exigencies of the situation, by minute entry May 10, Record Book 10, page 164, we ordered petitioners to serve the Attorney General and Secretary of State with, and notify proponents of, the petition; fixing successive return days for traverses and briefs and service thereof, authorizing appearances and argument at the hearing, set for June 2, 1954.

May 14 petitioners filed proof of proper service.

May 18 the Attorney General filed his response to the effect he had no adversary interest herein, individually or officially; that he entitled the act in accordance with the statute; waived reply brief or argument, and stood ready to assist the Court.

Proponents, through their attorney, May 19 filed a petition as by the "Peoples Right to Work Committee, Inc.," a non-profit cor-

poration organized by: Vern E. Walquist, C. W. Burke, Craig W. Johnson, Keith H. Johnson and Ivan W. Johnson, who had signed the original initiative proposal and asked, as of June 2, an order allowing it to intervene, which order was issued at the subsequent hearing. Said Committee and representatives of proponents also filed a motion to dismiss on various grounds, challenging so far as material here, the jurisdiction of this Court to entertain this proceeding and the procedure; also a motion to strike paragraph 8 of Petitioners' petition, which is the one challenging the sufficiency of the short title, on various grounds; and paragraphs 10 and 11, which were suggestions by the Petitioners as to both short and long titles, the latter as amended not criticised now, so not considered. Also a demurrer raising the same points; all supported by an elaborate and pertinent brief approbating the short title drawn by the Attorney General.

Hearing was had June 2 as set.

■ We must give effect to Section 34–1809, I.C., so far as we may consistently do so, to obtain substantial justice. Stark v. McLaughlin, 45 Idaho 112, 261 P. 244; Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, at page 701 et seq., 78 P.2d 105; State ex rel. Graham v. Enking, 59 Idaho 321, 82 P.2d 649; State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P.2d 244; Bel v. Benewah County, 60 Idaho 791, 97 P.2d 397; Northern Pac. Ry. Co. v. Shoshone County, 63 Idaho 36, 116 P.2d 221; Scandrett v. Shoshone County, 63 Idaho 46, 116 P.2d 225; State ex rel. Wright v. Headrick, 65 Idaho 148, 139 P.2d 761; State v. Groseclose, 67 Idaho 71, 171 P.2d 863; Keenan v. Price, 68 Idaho 423, 195 P.2d 662.

Article V, Section 2 of the Constitution vests the judicial power of the State—

" * * * in a court for the trial of impeachments, a Supreme Court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law for any incorporated city or town."

Section 9 of the same Article confers jurisdiction upon the Supreme Court—

" * * * to review, upon appeal, any decision of the district courts, or the judges thereof, and any order of the public utilities commission, and any order of the industrial accident board: the legislature may provide conditions of appeal, scope of appeal, and procedure on appeal from orders of the public utilities commission and of the industrial accident board. * * * The Supreme Court shall also have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction."

Obviously this is not an appeal from a district judge or a district court, public

utility commission order or order of the industrial accident board, nor any proceeding in aid of our appellate jurisdiction as such.

Section 7–202, I.C., provides:

"A writ of review may be granted by any court except a probate or justice's court, when an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy."

Section 7–208, I.C., thus limits the scope of the writ:

"The review upon this writ can not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

In Balderston v. Brady, 17 Idaho 567, at page 575, 107 P. 493, at page 495, prohibition issued to determine whether the State Land Board had jurisdiction, i. e., authority, under the Constitution and statutes, to relinquish preferential rights to selected lands granted in our State Admission Bill, the Court stated:

"It is obvious that if the contemplated action of the Board of Land Commissioners involves the exercise of a judgment or discretion vested in them by law, then this court cannot and will

not attempt to control that discretion, or in any manner interfere with or direct the action of the board. If, on the other hand, the action proposed is without authority of law, or has no legal sanction or authority, or is an attempt to act, not upon the discretion and judgment of the board, but upon a substituted judgment or discretion, or upon the judgment, discretion, and direction of some other board or body, then and *in such cases this court may interrupt them and declare the law on the subject, and point out to them the legal scope within which their judgment and discretion must be exercised.*" (Emphasis added.)

In Hawley v. Bottolfsen, 61 Idaho 101, 98 P.2d 634, a writ of review determined whether the Governor had regularly pursued his authority in relieving the plaintiff from his position upon the Idaho Fish and Game Commission and appointing another in his place, and examined the charges and considered them sufficient to uphold the action of the Governor in relieving the appointee of his position, stating the purpose of review is to determine primarily the law applicable to the case, rather than the facts of the case.

█ The facts in this case are the proposed initiative measure. Under the statute, the Attorney General is to draft, within ten words exclusive of the designation, "Initiative Proposal For," a distinctive title by which the measure is commonly referred

to or spoken of, to be printed in the foot-note margin of each sheet of the petition, i. e., the sheets to be circulated for the purpose of having them signed by the number required by Section 34–1805, I.C. Thus, this short title being printed upon these petitions to be circulated for names, under the terms of the statute, must not only be a title by which the measure is commonly referred to or spoken of, but must also be distinctive.

"Distinctive" is thus defined in Webster's International Dictionary, 1934 ed., page 756:

"Marking or expressing distinction; distinguishing, characteristic, peculiar. Having ability to distinguish; discriminating; distinct, separate; distinctive characteristic. Distinctive refers primarily to that which marks or distinguishes one thing regarded in its relation to other things; characteristic, that which constitutes or expresses the character or quality of the thing itself, without necessary reference to other things; * * *."

The Standard Dictionary, 1937 ed., p. 733, thus:

" * * * indicating distinction or difference; characteristic; distinguishing; as distinctive signs, distinctive traits. Distinctively, clearly, accurately. A mark or character indicating separation."

March—Thesaurus, 1906, p. 294: "characteristic."

Vol. 2, Cent.Dict.1889, p. 1694;

"1. Marking distinct, difference, or peculiarity; distinguishing from something diverse; characteristic; as, distinctive names or titles; * * *."

Vol. III, New Eng.Dict., Murray & Bradley, 1897, p. 526:

"1. Having the quality of distinction; serving or used to distinguish or discriminate; characteristic, distinguishing. * * *."

"3. Having a distinct character or position. * * * Bl. A distinguishing mark or quality; a characteristic."

See, also, United States v. Forty Barrels, 241 U.S. 265, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487.

This short title must, therefore, so far as possible within ten words, set forth the characteristics which distinguish this proposed measure and expeditiously and accurately acquaint the prospective signer with what he is sponsoring. State ex rel. Gibson v. Richardson, 48 Or. 309, 85 P. 225, 229, 8 L.R.A.,N.S., 362; Wallace v. Zinman, 200 Cal. 585, 254 P. 946, 62 A.L.R. 1341; Evans v. Secretary of Commonwealth, 306 Mass. 296, 28 N.E.2d 241; In re Opinion of the Justices, 309 Mass. 631, 35 N.E.2d 676; Sears v. Treasurer and Receiver General, 327 Mass. 310, 98 N.E.2d 621, at page 631.

■ In constructing and phrasing the title, the Attorney General, not as an advocate or an adversary, must perforce analyze and appraise the proposed legislation, determine what it means and its distinctive characteristics and endeavor to ascertain how it is commonly referred to or spoken of. In thus drafting and making an impartial, but comprehensive, short title, he is exercising a quasi judicial function. Horton v. Attorney General, 269 Mass. 503, 169 N.E. 552; Evans v. Secretary of Commonwealth, 306 Mass. 296, 28 N.E.2d 241, supra; Sears v. Treasurer and Receiver General, 327 Mass. 310, 98 N.E.2d 621, supra; 7 C.J.S., Attorney General, § 5, p. 1223, notes 33, 34. Thus, his efforts are subject to review by certiorari. Section 7–202, I.C.

■ We may, therefore, consistent with its historical concept, consider this proceeding is in the nature of a writ of certiorari or review to declare the legal requirements and standards by which the short title is to be constructed and to determine whether or not the title as submitted by the Attorney General complies therewith.

While Howe v. Attorney General, 325 Mass. 268, 90 N.E.2d 316, did not intimate certiorari was the proper remedy, by rejecting mandamus and referring to certiorari, it inferred it was a possible method. Horton v. Attorney General, 269 Mass. 503, 169 N.E. 552, at page 554, supra; Richardson v. Neuner, 183 Or. 558, 194 P.2d 989.

■ The portion of Section 34–1809, I.C., purportedly requiring this Court, itself, to prepare a short title or ballot title if that submitted by the Attorney General is incorrect, is beyond our power under the writ of certiorari or review. Balderston v. Brady, 17 Idaho 567, 107 P. 493; Northwest Light & Water Co. v. Alexander, 29 Idaho 557, 160 P. 1106; Gilbert v. Elder, 65 Idaho 383, 144 P.2d 194; Richardson v. Neuner, 183 Or. 558, 194 P.2d 989, supra. People v. Barbera, 78 Cal.App. 277, 248 P. 304, at page 305; Lemen v. Edmunson, 202 Cal. 760, 262 P. 735, at page 736; North Bend Stage Line v. Department of Public Works, 170 Wash. 217, 16 P.2d 206, at page 210; Lading v. City of Duluth, 153 Minn. 464, 190 N.W. 981, at page 982; State ex rel. Wright v. Barney, 133 Neb. 676, 276 N.W. 676, at page 684; In re Manufacturer's Freight Forwarding Co., 294 Mich. 57, 292 N.W. 678, at pages 682–683; Foraker v. Perry Tp. Rural Sch. Dist. B. of Education, 130 Ohio St. 243, 199 N.E. 74, at page 75; Hoffman v. Knollman, 135 Ohio St. 170, 20 N.E.2d 221, at page 228; Stein & Co. v. State Tax Board, 174 Ga. 611, 163 S.E. 187; American Mills Co. v. Doyal, 174 Ga. 631, 163 S.E. 603; State ex rel. Buckwalter v. City of Lakeland, 112 Fla. 200, 150 So. 508, 90 A.L.R. 704, at page 710(5); State ex rel. Wabash R. Co. v. Shain, 341 Mo. 19, 106 S.W.2d 898, at page 899; Ward v. Public Service Commission, 341 Mo. 227, 108 S.W.2d 136, at page 138.

The chief characteristic and paramount, distinctive features of the proposed statute are, that a person shall be allowed to seek, gain, obtain and retain employment regardless of whether or not he is a member of a labor union or labor organization. The measure further elaborates, but these are, as to a title, the essentials. Thus, tersely stated, this is an initiative measure for the right to work regardless of union membership or non-membership.

■ This phase of the proposed statute is not in any way presented or mentioned in the short title prepared and hence, it is defective and does not comply with the appropriate statutory requirements. Dagwell v. Thornton, 199 Or. 8, 259 P.2d 125; Westbrook v. McDonald, 184 Ark. 740, 43 S.W.2d 356, 44 S.W.2d 331.

The many references in proponents' briefs indicate that no doubt in many instances the title as prepared by the Attorney General is commonly used, but under the statute and for the purpose for which it is designed, namely, to acquaint prospective signers with the distinctive characteristics of the proposed measure, such appellation—though it may be applied and used generally and loosely—is not sufficient. The deficiency in the title, therefore, in no way reflects any discredit on the learned Attorney General.

■ By merely ascertaining and declaring the law and determining the title prepared by the Attorney General does not comply with the statutory requirements, we are not invading the legislative field any more than we did the executive field when we passed upon the acts of administrative or executive officers in numerous previous writs of review. Neither are we entering into or usurping the legislative function in passing upon this proposed title any more than when we determine whether the title of a statute passed by the legislature complies with Article III, Section 16 of the Constitution. We have jurisdiction, in advance of proposed action, to exercise our judicial power—as for instance, by declaratory judgments.

■ It is obvious there is more imperative reason for a title for an initiative measure than for a proposed statute before the legislature. This is recognized by all the authorities that have considered this phase of the initiative, and someone must prepare the title. The statutory delegation of this duty to the Attorney General has been adopted by many states and the Attorney General is not entering the legislative field in this respect any more than when he exercises the power enjoined upon him in Section 67–1401, subd. 6, Idaho Code.

■ The exigencies of the exercise of the initiative right justify the making of a title by a disinterested, impartial officer and the Legislature was authorized to so delegate this quasi-judicial function to the Attorney General. Article I, Section 1 of the Constitution.

The title as fixed by the Attorney General, therefore, is disapproved and he will, within five days after this decision becomes final, prepare a title in accordance with the views expressed herein and file the same with the Secretary of State.

PORTER, C. J., and THOMAS and KEETON, JJ., concur.

## Appendix
## "Be It Enacted By The People Of The State Of Idaho:

"Section 1. It is hereby declared to be the public policy of Idaho that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization.

"Section 2. Any agreement or combination between any employer and any labor union or labor organization whereby persons not members of such union or organization shall be denied the right to work for said employer, or whereby such membership is made a condition of employment or continuation of employment by such employer, or whereby any such union or organization acquired an employment monopoly in any enterprise, is hereby declared to be against public policy and an illegal combination or conspiracy.

"Section 3. No person shall be required by an employer to become or remain a member of any labor union or labor organization as a condition of employment or continuation of employment.

"Section 4. No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment.

"Section 5. No employer shall require any person, as a condition of employment or continuation of employment, to pay any dues, fees or other charges of any kind to any labor union or labor organization.

"Section 6. Any persons who may be denied employment or be deprived of continuation of his employment in violation of sections three, four or five or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation or association acting in concert with him by appropriate action in the courts of this State such damages as he may have sustained by reason of such denial or deprivation of employment.

"Section 7. The provisions of this act shall not apply to any lawful contract in force on the effective date hereof but they shall apply in all respects to contracts entered into thereafter and to any renewal or extension of an existing contract.

"Section 8. The provisions of this act are declared to be severable and the unconstitutionality or invalidity of any section or provision of this act shall not affect the remainder thereof.

"Section 9. All acts, whether general, local, special or private, or parts of such acts, in conflict with or which are inconsistent with the provisions of this act are hereby repealed."

TAYLOR, Justice (dissenting).

I do not doubt the power of this court to entertain and dispose of this proceeding as one upon certiorari. However, in doing so the majority implies that this court has no jurisdiction to entertain it as an "appeal". It is with this proposition that I disagree.

The ultimate effect of the opinion is to limit the jurisdiction of this court to the powers expressly enumerated in § 9, Art. 5, of our constitution. It means that the people in setting up the state government limited the powers of this court to those expressly enumerated, and withheld all powers not thus expressly granted. This narrow construction ignores other pertinent provisions of the constitution. It ignores the historic background and concept of constitutional government as developed in the United States. It is out of harmony with the vast majority of the considered decisions of the courts of our sister states. It is out of harmony with the previous decisions of this court.

The majority view is correct as applied to the federal constitution. In creating the federal government, the people of the original colonies and their delegates were con- strained and actuated by an abiding fear of a despotic usurpation of power by a strong central government. Out of this apprehension arose the division of the powers of government, the bill of rights, and many other restrictive provisions. To remove all uncertainty it was provided by the Tenth Amendment that:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The colonies were independent sovereignties and as such possessed unlimited governmental power. By the restrictions which they wrote into the constitution and particularly by the Tenth Amendment they sought to and did retain the status of sovereign states under the constitution. That same status, with its characteristics of sovereignty, has been extended to all of the states subsequently admitted to the Union.

In drafting and adopting the constitution of this state, the people created a government of unlimited sovereign powers. The only limitations were those expressly set forth in the constitution itself, and the limitations imposed by the delegation of powers to the federal government. Nowhere in our state constitution is there any provision to the effect that powers not specifically given are reserved to the people, such as the Tenth Amendment to the federal constitution. Specific limitations upon the power of the state government are contained in the dec-

laration of rights. Art. 1. This declaration concludes with § 21, to-wit:

"This enumeration of rights shall not be construed to impair or deny other rights retained by the people."

By its terms, this is a reservation of rights and not a limitation upon the governmental powers vested in the state government. It clearly appears to be a safety device for the protection of rights not specifically enumerated, rather than an expression of the will of the people to limit either of the departments of the state government in the exercise of their proper functions. This thought is borne out by the fact that the section is a parallel to the Ninth Amendment to the federal constitution, but in the case of the federal government the Tenth Amendment was added, and deemed necessary, to reserve powers not delegated.

The powers of government given by § 1, Art. 2, § 5, Art. 4, and § 1, Art. 3, of our state constitution, are given without terms of reservation, except the reservation in the people of the power to legislate by means of the initiative and referendum.

The judicial power is vested in the courts without any limitation or reservation whatever.

"The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may

be established by law for any incorporated city or town." § 2, Art. 5, Idaho Constitution.

"The judicial power" means all the judicial power and cannot be construed to mean only a part thereof. Nor can it mean all of the power, subject to reservations or restrictions nowhere expressed. The word "vested" must be given its commonly accepted meaning. It cannot be construed to mean that the power referred to, or any part of it, is suspended, withheld, or reserved. Accordingly the courts are free to exercise any power properly belonging to the judicial department, subject only to the limitations contained in the federal and state constitutions.

"The constitution of the United States is distinguishable from a state constitution on the ground that the former is primarily a grant of power, and a state constitution is not a grant, but is a limitation, of power." 16 C.J.S., Constitutional Law, § 67, p. 124.

"* * * it has frequently been held or recognized that a state constitution is not a grant or delegation of power, but is a limitation or restriction of power." 16 C.J.S., Constitutional Law, § 70, p. 132.

Most of the cases dealing with the subject, collected in C.J. and C.J.S., are concerned with questions of legislative power and in § 70, above quoted from 16 C.J.S., on page 133 it is noted that in a few juris-

·dictions the state constitution has been referred to as a grant or delegation of power to the legislature. But even in these, as shown by the footnotes, the "grant" is regarded as a grant of full power, subject to the limitations contained in the constitution. The section continues:

"In any event, the constitution is not usually a grant of enumerated or specified powers to the legislature. * * * A state constitution is construed strictly in favor of the state, and as not divesting it or its government of any of its prerogatives, unless the intent to do so is clearly expressed, and, generally speaking, it should be given a liberal and broad construction in favor of the power of the legislature." 16 C.J.S., Constitutional Law, § 70, pp. 134 and 140.

"A doctrine firmly settled in the law is that a state constitution is in no manner a grant of power. It operates solely as a limitation of power." 11 Am. Jur., Constitutional Law, § 18, p. 619.

Early decisions of this court are cited in support of these texts. In State v. Dolan, 13 Idaho 693, 92 P. 995, 14 L.R.A.,N.S., 1259, the court held the legislature had power to enact any law not in conflict with the United States or state constitutions.

In Achenbach v. Kincaid, 25 Idaho 768, at page 781, 140 P. 529, 533, the court quoted from State v. Cochran, 55 Or. 157, 104 P. 419, 105 P. 884, as follows:

"'A state Constitution, unlike a federal Constitution, is one of limitation and not a grant of powers, and any act adopted by the Legislature not prohibited by the state Constitution is valid, and the inhibition must expressly or impliedly be made to appear beyond a reasonable doubt.'"

"The Constitution of the state of Idaho is a limitation upon the legislative power in all matters of legislation, and is not a grant of power." Idaho Power & Light Co v. Blomquist, 26 Idaho 222, 141 P. 1083, 1088.

"It is a fundamental rule of constitutional law that a state Constitution is an instrument of limitation and not a grant, that all powers are retained to the state not expressly withheld, and the decisions in this state are bottomed squarely upon that rule." Diefendorf v. Gallet, 51 Idaho 619, at page 637, 10 P.2d 307, at page 314.

Other decisions of this court adhering to the same principle are: St. Joe Imp. Co. v. Laumierster, 19 Idaho 66, 112 P. 683; Williams v. Baldridge, 48 Idaho 618, 284 P. 203; Independent School Dist., Class A, No. 1, Cassia County v. Pfost, 51 Idaho 240, 4 P.2d 893, 84 A.L.R. 820; Lloyd Corp. v. Bannock County, 53 Idaho 478, 25 P.2d 217; Garrity v. Board of County Commissioners, 54 Idaho 342, at page 350, 34 P.2d 949; Koelsch v. Girard, 54 Idaho 452, 33 P.2d 816; Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, at page 722, 78 P.2d 105;

Boughton v. Price, 70 Idaho 243, 215 P.2d 286; Utah Oil Refining Co. v. Hendrix, 72 Idaho 407, 242 P.2d 124. Like decisions from other states are too numerous to collect here. It is sufficient to say that the vast majority of the state constitutions are so construed.

There follows from this general proposition, as a matter of logic, the further proposition, likewise generally recognized, that the rule "expressio unius est exclusio alterius" has no application to the provision of a state constitution.

"Express enumeration of legislative powers is not exclusive of others not named unless accompanied by negative terms." MacMillan Co. v. Clarke, 184 Cal. 491, 194 P. 1030, at page 1033, 17 A.L.R. 288.

"It is, of course, elementary law that, unlike the federal constitution, the state constitution is not a grant of power to the legislature but rather a limitation upon the powers of that body. An express enumeration of legislative powers is not exclusive of others not named, unless accompanied by negative terms." Slavich v. Walsh, 82 Cal.App.2d 228, 186 P.2d 35, at page 39.

"* * * the respondent contends that under the doctrine of expressio unius est exclusio alterius, since the Constitution specifies two items which may be allowed, any other allowances are invalid. This argument overlooks the fact that our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature". (Citations.) Collins v. Riley, 24 Cal.2d 912, 152 P.2d 169, at page 171.

This rule was again approved and quoted by the supreme court of California in Dean v. Kuchel, 37 Cal.2d 97, 230 P.2d 811.

This court has also so held:

"Certainly our Constitution does not expressly prohibit the people of Idaho from raising revenue in the manner provided in chapter 179 of the Session Laws of 1913, and, while it is true there are three methods of raising revenue expressed in section 2 of article 7 of the Constitution, we cannot infer from this that an implication arises prohibiting the state from also raising revenue pursuant to its inherent power to do so in any other manner its Legislature may see fit to adopt." In re Kessler, 26 Idaho 764, 146 P. 113, 114, L.R.A. 1915D, 322, Ann.Cas.1917A, 228. Quoted in Diefendorf v. Gallet, 51 Idaho 619, 10 P.2d 307.

As noted above, the rule that the state constitution is a limitation and not a grant of powers has most frequently arisen in cases involving the legislative department. However, the same principle has been applied to the executive and judicial department. In State ex rel. Fritts v. Kuhl, 51 N.J.L. 191, 17 A. 102, the supreme court

of New Jersey applied the rule to the appointive power of the governor. In its opinion the court said:

"It is a postulate of a state constitution, which distinguished it from the federal constitution, that all the power of the people is delegated by it, except such parts of it as are specifically reserved. Kirby v. Shaw, 19 Pa. [258] 260; [Wisconsin Cent.] Railroad Co. v. Taylor Co., 52 Wis. [37] 86, 8 N.W. 833. The power to fill the vacancy in question is not reserved in the constitution to the people themselves. It does not inhere in the courts, and cannot be exercised by the legislature when not in session. If it resides anywhere, it must be in the chief executive department of the government." State ex rel. Fritts v. Kuhl, 51 N.J.L. 191, 17 A. 102, at page 107.

Again approved by that court in Attorney General v. McGuinness, 78 N.J.L. 346, 75 A. 455. In Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105, the supreme court of Michigan applied the rule to the judicial power of the state courts. In Anway v. Grand Rapids R. Co., 211 Mich. 592, 179 N.W. 350, 12 A.L.R. 26, the supreme court of Michigan, in a divided opinion, had held the original declaratory judgment act of that state, unconstitutional, as an attempt by the legislature to confer non-judicial powers upon the courts. The act was thereafter amended and again came before the court in the Washington-Detroit Theatre case. Referring to the argument that courts have no power to deal with questions which are either moot or hypothetical, the court said:

"This historical argument, however much it may circumscribe a government of granted powers, is not applicable to a sovereign state whose inherent powers enable it to attempt solution of any social problem arising from current conditions, and which may adventure into experiment for the public welfare.

"While the Legislature obtains legislative power and the courts receive judicial power by grant in the state Constitution, the whole of such power reposing in the sovereignty is granted to those bodies except as it may be restricted in the same instrument. There is no constitutional restriction on the power of the Legislature to recognize the complexity of modern affairs, and to provide for the settlement of controversies between citizens without the necessity of one committing an illegal act or wronging or threatening to wrong the other. There is no constitutional expression of limitation upon the power of the court to decide such disputes. * * *

" 'Turning to the function or duty imposed by our declaratory judgment act upon the superior court as set forth above, could it be claimed with any pretense of reason, that the function was legislative or executive? The answer

is obvious. We must then conclude that the function is judicial, or that it falls outside of the three functions described as legislative, executive, or judicial. It would be a travesty to hold that this method of remedial justice could find no place in our system of government unless a place was made for it by an amendment to the Constitution.' Braman v. Babcock, 98 Conn. 549, 120 A. 150, 152." Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 229 N.W. 618, at page 620, 68 A.L.R. 105, at page 108.

It is worthy of note that Michigan is one of the minority courts listed in the footnotes in 16 C.J.S., Constitutional Law, § 70, supra. This listing probably results from the court's loose language in referring to the judicial power as a "grant" in the constitution. But, in the same sentence the court says, "The whole of such power reposing in the sovereignty is granted to those bodies". [249 Mich. 673, 229 N.W. 620.] Thus, indicating that the same rule is applied in Michigan as contended for here. Many of the decisions dealing with questions of legislative power use general terms indicating their view that the same rule of construction would apply to the other departments of state government. As an illustration, in Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 P. 294, at page 304, the court said:

"The Constitution of Montana is not a grant of power, but rather a limi-

tation upon powers exercised by the several departments of the state government."

No reason appears, or has been advanced for the application of a different rule to the powers of the executive and judicial departments of the state government, than that applied to the legislative department.

The case of Neil v. Public Utilities Commission, 32 Idaho 44, 178 P. 271, in holding that the jurisdiction of this court is limited within the confines of § 9, Art. 5, of our constitution, is not controlling. The question here considered was not before the court in that case. That was a proceeding in certiorari. For this reason, the statement therein that the appellate jurisdiction of this court is limited to the review of decisions of the district courts appears to be dictum. It does not appear from the briefs of counsel or the opinion that the rule of construction applicable to the state constitution was presented or considered in that case. The same may be said of State v. Ricks, 32 Idaho 232, 180 P. 257, 13 A.L.R. 99, except that was an appeal from the district court.

Some of the cases from other states, relied upon by the majority, are based upon restrictions in the constitutions involved; restrictions which are not found in our constitution.

By Chapter 18 of Title 34, I.C., the legislature has provided the procedure to enable the people of the state to exercise their

reserved legislative power by initiative and referendum. By § 34–1809, I.C., it has provided for a direct appeal to this court from the action of the attorney general in providing a title for any measure to be referred to the people. That the legislature can neither enlarge nor diminish the judicial power of the courts is elemental, and is expressly forbidden by the constitution itself. § 1, Art. 2; § 13, Art. 5. However, this last section does give the legislature power to provide a proper system of appeals. This may be said to refer to appeals from lower courts, but there is nothing in the section to indicate such a limitation.

If the courts are vested with the whole judicial power of the state, this act in providing for such an appeal could not broaden that power, or extend the court's jurisdiction. It already exists. The act merely recognizes that jurisdiction, and directs the parties to a controversy arising under the act, to apply to the judicial department of the state government to have their rights and duties determined and their controversy settled in a judicial proceeding. It is admitted that a review by this court on appeal is a judicial function. However, it has been suggested that the direction in the section that this court in its decision certify a title, to the secretary of state, is an attempt to require this court to perform a legislative function. Two answers to this argument suggest themselves. First, the act of drawing a title, whether it be the ballot title or short title, is arrived at by a judicial construction of the proposed initiative measure, and the judicial application of the legislative intent as expressed in the act. Where a real justiciable issue has arisen between citizens in their attempt to exercise or safeguard their reserved legislative power, the settlement of that conflict by the application of the judicial power of the state becomes imperative. Otherwise, the reserved legislative power of the people is either denied, impaired or exposed to abuse. In this respect the writing of a title is no more a usurpation of power by the courts than occurs in any case where the title of an act of the legislature is called in question and the court, from an examination of the act, determines and declares whether the title is defective and if so in what particulars. True, in such a case the court acts after the act is passed by the legislature. But to examine a proposed initiative measure and to declare the appropriateness of the proposed title by the standards set up in the act, before the measure is voted on by the people, but after an actual controversy has arisen is an exercise of the same judicial power and function involved in a declaratory judgment. The power of the courts to enter declaratory judgments is now universally recognized. Secondly: The legislative department of the state government is not involved and its prerogatives are therefore not subject to encroachment in such a proceeding, for the simple reason that the proceeding arises

under the reserved legislative powers of the people themselves. To make that power available and to enable them to exercise it, the people must have resort to the courts for the solution of differences arising among them incident to the process of such legislation.

As to the proposition that appeals in such cases should come to this court from the district courts, I am of the opinion that there is a sufficient and cogent reason justifying the legislature in providing that the appeal be directly to this court. Initiative proposals are always advanced in election years. To require litigants involved in controversy over the title to such measures, to first take their case to the district court before coming to this court, would, in most cases, enable the opposition to prevent a vote on any such proposal. The time involved in such a circuitous course, even when no delaying tactics are employed, would ordinarily be sufficient to defeat the proposal. No reason appears why a direct appeal should not be available. The questions presented are entirely questions of law arising upon the analysis of the proposed measure and the application of the statute thereto, with the possible addition of such facts as courts judicially notice.

The fear that the legislature will embark upon a program of providing direct appeals from various state officers, boards, commissions or bureaus, I think is unfounded. This court, in our judicial system, is not a trial court, and I entertain no fear that the legislature will try to make it such. Where the exigencies of the situation require this court to act, in order to preserve and effectuate the fundamental rights of the people, timidity should not prompt us to surrender or deny the judicial power entrusted to our keeping.