PRATUM CO-OP WAREHOUSE *v.*
DEPARTMENT OF REVENUE

Richard A. Seideman, Garrett, Seideman & Hemann, Salem, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered June 27, 1975.

CARLISLE B. ROBERTS, Judge.

Plaintiff has appealed from defendant's denial of relief under ORS 307.475. Such denial was manifested by a letter dated December 12, 1974, addressed to a firm of certified public accountants, acting on behalf of the plaintiff, the letter being signed by the Administrator of the Appeals Division of the Department of Revenue.

The facts have been stipulated. The plaintiff is an Oregon cooperative corporation engaged in buying and selling local seed, grain and fertilizer products. It typically had a large inventory on January 1, which "was transported or shipped to another point before May 1 of the year of assessment" and was entitled to tax exemption under ORS 308.250. Applications for exemption have regularly been filed by the plaintiff in Marion County for each tax year between 1965 through and including 1973, except for 1970.

In 1974, the plaintiff's bookkeeper prepared and filed the personal property tax return required by ORS 308.290, including the value of the property for which exemption is sought herein. In prior years, he had also filed the application for cancellation of the assessment pursuant to ORS 308.250. On March 18, 1974, he was replaced by a new bookkeeper who "had no experience or knowledge whatsoever concerning, and in fact had never heard of, the application for cancella-

tion of assessment." (Stip of Facts, 3.) No timely application was made for the 1974 assessment year. The omission was first noted by the plaintiff's accountants in August 1974. A late application was prepared and filed with the Marion County Assessor on or about August 21, 1974, and was disallowed by the assessor because ORS 308.250 requires that:

"(5) No cancellation of assessment under * * * this section shall be made unless the required proof is furnished to the assessor on or before May 15 of the year of assessment."

Steps were then taken to appeal to the defendant, seeking its approval of the exemption under the "hardship" test of ORS 307.475.[1]

ORS 307.475 (1973 Replacement Part), codifying Or Laws 1973, ch 218, is unique. It has not been construed. It reads:

"(1) Any taxpayer may apply to the Director of the Department of Revenue for a recommendation that the value of certain property be stricken from the assessment roll and that any taxes assessed against such property be stricken from the tax roll on the grounds of hardship.

"(2) As used in this section, 'hardship' means a

---

[1] The court raised a question as to whether it had jurisdiction in the suit, inasmuch as the "order" of the defendant relied upon by the plaintiff is a letter signed by the Administrator, Appeals Division, Department of Revenue. Ordinarily, an order is signed by the defendant's Director or Deputy Director. ORS 305.115. However, counsel for defendant stated that where a refusal to apply ORS 307.475 is involved, the type of letter used in this case is utilized by the department to dismiss the appeal. An "order" is defined in ORS 183.310(4) as "[a]ny agency action expressed verbally or in writing directed to a named person or named persons, other than employees, officers or members of an agency, * * *." Relying on the representation of counsel, supported by this broad definition of "order" in the Administrative Procedures Act, and utilizing the presumption respecting performance of official duty, ORS 41.360(15), the court assumes jurisdiction.

situation where property is subject to taxation but would have been exempt had there been a timely filing of a valid claim for exemption or cancellation of assessment, and where the failure to make timely application for the exemption or cancellation was by reason of good and sufficient cause.

"(3) An application to the director for a recommendation of tax relief on the grounds of hardship must be made not later than December 15 of the year in which the failure to claim the exemption or cancellation of assessment occurred, or within three months from October 5, 1973, whichever is the later.

"(4) If the director, in his discretion, finds that tax relief should be granted on the grounds of hardship, he shall send his written recommendation to the assessor of the county in which the property is located. If the assessor agrees with the recommendation, he shall note his approval thereon and transmit the recommendation to the county governing body. The county governing body may accept or reject the recommendation in whole or in part, but may not increase any recommended relief. If the county governing body approves relief, it shall send an appropriate order to the person in charge of the roll to either (a) strike all or a portion of the assessment, (b) strike all or a portion of taxes on the tax roll, or (c) issue a refund of taxes already paid. A refund of taxes paid shall be treated as any refund granted under ORS 311.806."

Plaintiff argues that a chief proponent of the measure, testifying before the Senate Committee on Revenue, illustrating the problem to be cured, offered the case of a constituent who had been out of the state at the time the application for exemption was due under ORS 308.250 and returned to find that his employee had failed to meet the requirement.[2] Plaintiff equated

[2] Courts have regularly denied the ORS 308.250 exemption because of an untimely application, as required by the manda-

the proponent's intent with legislative intent and pleaded that this court, required by statute to treat the proceeding "in the nature of a suit in equity" (ORS 305.425(2)), had the authority to grant the plaintiff the relief requested, although denied by the defendant.

It is necessary to construe ORS 307. 475. The statute is extraordinary in that the defendant department (generally entrusted with complete oversight of the system of taxation in the state) can, in this instance, make only a recommendation to the county assessor who, in turn, can make only a recommendation to the governing board of the county, which in turn can decide whether relief shall be granted in the premises.

The defendant's recommendation requires the exercise of discretion. It must determine not only that hardship exists, in consequence of a failure to make timely application for the exemption of cancellation of assessment; it must also find that the failure "was by reason of good and sufficient cause."

ORS 307.475 is a clear example of legislative entrustment of discretion in an administrative agency. This court has previously taken notice that when discretion has been vested in an administrative officer, the court will confine its review of the officer's action to consideration whether the officer exercised his discretion judiciously and not capriciously and arrived at no conclusion which was clearly wrong. *Dayton v. Dept. of Rev.,* 5 OTR 56 (1972); *Martin Bros. v. Commission,* 3 OTR 111 (1967), and cases cited therein.

tory language of subsection (5). *Kolstad Canneries v. Dept. of Rev.,* 4 OTR 34 (1969); *Bernard Chevrolet v. Commission,* 3 OTR 411 (1969); *Northwest Poultry and Dairy Products Co. v. Wiley Smith, Mult. Co. Assessor et al.,* Circ. Ct., Mult. Co. No. 221-642 (decided 12-30-54).

█ The department has consistently held that "good and sufficient cause" exists only where there has been illness, absence, or disability of such a nature as to preclude filing the claim during a substantial portion of the filing period. The defendant has regularly refused favorable recommendations where the applicant failed to file a timely application because of oversight, inadvertence, or ignorance of the law.

The court, under the facts of the present case, can find nothing to criticize in defendant's established boundaries. As argued by the defendant, to accept any of the latter causes (oversight, inadvertence, ignorance) as "good and sufficient cause" would require a favorable recommendation in practically all cases, effectively eliminating any need to meet statutory deadlines established by the legislature. This would greatly complicate the work of the county assessor's office in properly extending the roll to meet the various taxing district levies, a task which must ordinarily be completed in July of the assessment year.

Plaintiff acknowledges the rule limiting the court in substituting its concept of "good and sufficient cause" for that of the administrative agency charged by the legislature to exercise its discretion in the first instance under ORS 307.475. However, the plaintiff asks the court (a) to discover legislative intent in a record of the Senate Committee on Revenue at hearings on the measure which became ORS 307.475, and (b) to utilize the court's equitable powers (suggested by ORS 305.425(2)) to alleviate plaintiff's hardship.

The plaintiff's first argument springs from the reading of the transcript of a tape recording, found in the Oregon Archives, offering one senator's testimony in favor of the measure. It related to the failure of an employee to take action to apply for a tax exemption in the employer's absence from the country.

■ The court can give no weight to this testimony of a proponent of a bill before a committee of the legislature. The necessary legal fiction of "legislative intent" is not aided by the statements of a single legislator. As stated in *Murphy v. Nilsen,* 19 Or App 292, 296, 527 P2d 736, 738 (1974):

"The Commissioner [of the Bureau of Labor], in trying to determine legislative intent, took testimony from persons interested in the legislation (possibly lobbyists) about their observations of what occurred and what the legislators were intending. Such evidence is incompetent for this purpose, just as the testimony of an individual legislator would be. *See* 2A Sands, Sutherland Statutory Construction §§ 48.10 and 48.17 (4th ed 1973)."

■ There are many extraneous aids to the construction of statutes which are utilized by courts, each given more or less credence, but the basic method of determining legislative intent is to construe the words of the statute as they appear in the official text, utilizing those aids which are available to any person trained in law. Here the statute clearly vests discretion in the defendant and leaves to it the meaning of "good and sufficient," limited only as discussed above.

The plaintiff's second argument, basically, is that the maxim, "ignorance of the law excuses not," should be set aside, under the facts of this case, on grounds of equity.

■ This *is* a hardship case, but the court, in the name of equity, does not have the power to set aside the department's discretionary determination of what constitutes good cause, except upon proof of caprice or a clear wrong (as in a case of fraud, discrimination or other wrongful act). Of course, a court, construing a new statute, must seek to ascertain the reason of the law and the spirit of it, or the cause which moved the

legislature to enact it. As stated by Sir William Blackstone in his Commentaries:

"From this method of interpreting the laws, by the reason of them, arises what we call equity; which is defined 'the correction of that, wherein the law (by reason of its universality) is deficient.' For since in laws all cases cannot be foreseen or expressed, it is necessary, that when the general decrees of the law come to be applied to particular cases, there should be somewhere a power vested of defining those circumstances, which (had they been foreseen) the legislator himself would have expressed. And these are the cases, which 'the law does not define exactly, but leaves something to the discretion of a just and wise judge.'" [Ehrlich's Blackstone, 21.]

However, in this instance, the legislature has clearly given the allotted discretion and judgment into the keeping of an administrative agency, the Department of Revenue, and the court cannot properly substitute its discretion for that of the agent chosen by the legislature. To the administrator there is applied the caution which Blackstone adds to the foregoing quotation:

"Equity thus depending, essentially, upon the particular circumstances of each individual case, there can be no established rules and fixed precepts of equity laid down, without destroying its very essence, and reducing it to a positive law. *On the other hand, the liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law, and leave the decision of every question entirely in the breast of the judge.* And law, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion; as there would then be almost as many different rules of action laid down in our

courts, as there are differences of capacity and sentiment in the human mind." [Ehrlich's Blackstone, 22.] (Emphasis supplied.)

Plaintiff can take nothing by its complaint, which is hereby dismissed.

Costs are awarded the defendant.