# IN THE OREGON TAX COURT

## CORVALLIS COUNTRY CLUB
*v.*
## DEPARTMENT OF REVENUE
(TC 2383)

Thomas E. Elliott, Evashevski & Elliott, Corvallis, represented plaintiff.

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered October 27, 1986.

**CARL N. BYERS, Judge.**

This case concerns the assessed value as of January 1, 1984, for plaintiff's real property. The subject property is an 18-hole country club golf course. The country club is located on the southwest edge of the City of Corvallis in a residential neighborhood. The course is a long-established institution with the first nine holes built in 1915 and the second nine holes built in about 1956. The clubhouse, containing approximately 6,000 square feet, was built in about 1945 and houses

the pro shop, locker rooms, showers, and storage area. The restaurant-lounge building contains approximately 8,000 square feet and was built in 1967. In addition there is a maintenance shed, four outdoor tennis courts and a 30-by-60-foot outdoor swimming pool.

Although somewhat disputed, the evidence indicates that the improvements on the property are not in top shape. The club manager testified that historically the club's board of directors have been reluctant to assess members for capital needs. As a result, the club has incurred substantial deferred maintenance. Capital expenditures are not made until the need becomes critical (i.e., the roof leaks or the plumbing fails). Plaintiff's witnesses also testified that the golf course irrigation system is approximately 26 years old and will need to be completely replaced within the next five years at a cost of $400,000 to $800,000. The testimony indicated that irrigation system maintenance expenses are increasing and the system is so old that it is now near impossible to get parts. Defendant disputed the need to replace the irrigation system but defendant's position is weak due to lack of specific information and experience.

The valuation evidence was submitted by three qualified appraisers. Messrs. Boyd and Stepp testified for plaintiff. Both appraisers relied primarily on the market comparison approach and utilized the cost approach as a check on the value indicated by the market approach. Mr. Stepp also performed an income approach calculation but did not place any reliance upon that approach. Defendant's appraiser, Mr. Nelson, also relied primarily on the market approach, using the cost approach and a modified income approach (greens fee) as a check.

The court finds that the market comparison approach should be given the most weight. Although the comparable sales varied in quality, they were sufficient in number to provide a valid indication or range of value. In contrast, while the cost approach can be used as a valid check it does not appear that it should be given equal weight because of the numerous assumptions and judgments required. For example, in this case, the appraisers had to use farmland as a surrogate measure for the cost of open space golf course land. Also, the age of the course made it difficult to accurately establish the

subject's class for purposes of using the Marshall Valuation Service cost factors. Finally, age played a factor in the estimates that had to be made for depreciation on the buildings, irrigation system, soil drainage system, and other attributes. The number and nature of all these additional judgments rendered the cost approach of less than equal weight.

Both Mr. Boyd and Mr. Nelson focused on the per hole value of the golf course. They subtracted from the comparable sale prices the value of the buildings, excess land and other non-golf course assets included in the sale price. This left them with a value for the improved golf course which they could then compare on the basis of irrigation, drainage problems, soil type, landscaping, topography, location and other features. The merit of this approach is to view the course with a golfer's eye and to obtain more specific adjustments. Despite their similar approaches, however, Mr. Boyd found a value of $40,000 per hole while Mr. Nelson found a value of $61,500 per hole. Mr. Stepp sailed a different tack and viewed each comparable sale golf course as a whole. Although he excluded non-golf course elements such as excess land, he did not eliminate buildings, swimming pools and other improvements from the golf course value. As a result, he found indications of value for whole courses rather than on a per hole basis. His analysis showed a range of value for the subject property of $1,260,000 to $1,400,000.

In weighing the market comparison evidence, the court has also considered each appraiser's analysis of the course in applying the cost approach. That is, Mr. Boyd sees the subject property as a Class II course and, as a result, adjusted the McNary comparable sale down 40 percent. Both Mr. Nelson and Mr. Stepp saw the subject property as somewhere between a Class II and and a Class III course comparable to the McNary course. However, Mr. Stepp found both the Rock Creek sale and the Shadow Hills sale comparable, while Mr. Nelson found both of those sales inferior to the subject property. On the whole, the court finds Mr. Stepp's judgment the most persuasive in light of the details adduced relative to each comparable sale. Although Mr. Stepp may have deducted too much for the excess land in the McNary sale, it is clear that the McNary sale was motivated by development potential. When viewed in comparison with all of the comparable

sales and the subject, the McNary sale is outside the range unless adjusted for a development premium.

As utilized by the appraisers, the cost approach was made up of three general categories: the bare land cost, the cost of buildings, etc., and the cost of developing the golf course itself, including irrigation and drainage. After reviewing the evidence submitted by the parties concerning the land cost, it appears to the court that Mr. Boyd went too far "afield" for open space land and thus undershot the cost. On the other hand, Mr. Nelson's analysis found higher values based on soil class. The court is persuaded that soil class is not a significant factor for golf course use. Rather, location or proximity to a population center such as Corvallis is probably the major factor. The problem is that there was no evidence to distinguish land values based on dvelopment potential and land which needs to be near the city but without development potential. As a result, farmland sales based on soil type are a poor indication of land value for a golf course. The court, therefore, concludes that the average cost per acre would be approximately $2,500.

Both Mr. Boyd and Mr. Stepp estimated the depreciated replacement cost of the buildings and other improvements at approximately $520,000. Mr. Nelson estimated such cost to be approximately $616,000. The preponderance of the evidence showed that due to the arrangement and age of the buildings, they would be replaced with a single building, utilizing a different layout. Although Mr. Nelson agreed with the concept of replacing the structures with one building, he calculated the replacement cost on the basis of the existing buildings "because that is what existed." The court finds that a reasonable estimate of depreciated replacement cost would be $520,000.

All three appraisers used a cost per hole for development of the cost of the golf course improvements. As indicated above, Mr. Boyd saw the course as a Class II course and then depreciated that cost to arrive at an estimated cost of improvements of $515,000. Mr. Stepp started with a cost of $50,350 per hole, then deducted 10 percent for general depreciation and 75 percent of the estimated 30 percent cost of the irrigation system to come to a total estimated cost of $615,000. Finally, Mr. Nelson started with a reproduction cost of

$54,378 per hole, then deducted 50 percent of his estimated 25 percent cost for irrigation only, arriving at a total estimated cost of $856,400. The court cannot accept Mr. Nelson's rule of thumb that any functioning system is worth 50 percent of its replacement cost. The evidence supports finding that the 26-year old irrigation system is 75 percent depreciated. Based on all of the evidence adduced, the court finds that the depreciated cost of the improvements per hole for the cost approach should be $40,000, or a total of $720,000 for the 18 holes.

■   Based upon the above findings the value indicated by the cost approach would be approximately $1,500,000. It is apparent, however, that there are many reasons why this may not reflect the market value of the property. For example, the approach may fail to adequately reflect all of the depreciation involved, including the depreciation for the drainage problems suffered by the subject. Further, the topography of the subject property may be more hilly than rolling, resulting in the course being a little too interesting or too challenging for the typical golfer. Both Mr. Boyd and Mr. Nelson recognized that because of the nature of the open space land, this approach is weak. The court notes that there are inherent weaknesses in the cost approach. As illustrated by Mr. Nelson's testimony, although there are over 2,000 mature trees on the subject course, and the reasonable cost of installing a mature tree is $1,000, no one would spend $2,000,000 to put mature trees on a golf course nor would anyone value them at $2,000,000.

In summary, the court finds itself in general agreement with Mr. Stepp's appraisal. Mr. Stepp's appraisal is in many ways too general. His analysis and reasoning is not set forth in sufficient detail in many respects to persuade over a more specific appraisal. On the other hand, the court found numerous points of disagreement with both Mr. Boyd's appraisal and Mr. Nelson's appraisal, leading the court to find that the former was low and the latter too high. Hence the court finds the preponderance of the evidence indicates that the true cash value of the subject property as of January 1, 1984, was $1,400,000.

Plaintiff's complaint indicates that it failed to appeal the value of the subject property for 1982-1983 and 1983-1984. Nevertheless, plaintiff sought to have the Department of Revenue and this court grant relief as to those years. Plaintiff

alleges that the defendant department abused its discretion in refusing to grant relief under its supervisory authority. Plaintiff's appraisers testified that any difference in the value between the property as determined by the court and as found on the assessment roll in excess of 10 percent (Boyd) or 20 percent (Stepp) constitutes a "gross overvaluation" which requires the department to exercise its supervisory authority.

The department's regulation OAR 150-306.115(3)(b)(A)(i) indicates that:

> "A claim of a gross error exists if the difference between the requested value and the true cash value on the roll is greater than or equal to thirty (30) percent of the true cash value on the roll."

In order for the court to grant plaintiff's request, the court would have to find the quoted regulation invalid. The legislature has delegated substantial discretion to the Department of Revenue. The court may overrule the department only if it finds that the discretion was exercised in an arbitrary, capricious or wrongful manner. *Pratum Co-Op Whse. v. Dept. of Rev.,* 6 OTR 130 (1975). Here, the court agrees with the department standard. Oregon's statutory scheme contemplates that the vigilant taxpayer will question and appeal the assessed value of his property each tax year that the value appears to be excessive. Silence is deemed assent. Further, although a specific numeric value has to be assigned to property for purposes of taxation, it is recognized that value is not an absolute point.

> "As has often been said, 'true cash value' is a range of value, rather than an absolute. Although not a rule of law, it is generally accepted that appraisers will be deemed equally competent and their testimony useful if, acting independently, they come within 10 percent of each other in the ordinary case." *Price v. Dept. of Rev.,* 7 OTR 18, 25 (1977).

Plaintiff claims that any error in excess of 20 percent difference constitutes a gross error. However, it is readily apparent that if the range of value that constitutes "a gross error" is made too narrow, taxpayers will come to rely upon the rescue powers of the department rather than the normal appeal process. If the "normal" range of value for competent appraisers is 10 percent, it is not unreasonable for the department to determine that a "gross error" must exceed that range

by 10 percent on each side of the range. The difference between the assessed value of the subject property and the value as determined by the court does not meet the standard for gross error. Hence, the department did not abuse its discretion and no relief will be ordered for the 1982-1983 or the 1983-1984 tax years.

A judgment will be entered setting aside the Department of Revenue Opinion and Order Nos. 4-2496-02, 4-2497-02 and 4-2498-02 as to the 1984-1985 tax year and ordering the appropriate officers in charge of the tax rolls to make such corrections and take such action as necessary to conform with the opinion and judgment of the court. Costs to neither party.