DECISION
Plaintiff appealed Defendant's denial of an application for distributor licenses for cigarettes and other tobacco products (e.g., cigars), and for a cigarette wholesaler's license. Defendant denied the application because it believed that Plaintiff would not comply with applicable tax laws. The matter is before the court on Defendant's Motion for Summary Judgment, filed February 8, 2008. Plaintiff did not file a response or cross-motion or any other responsive pleading.[1]
 I. STATEMENT OF FACTS
A. Pre-Application Inspections
Based on a tip it had received, Defendant conducted an inspection of Plaintiff's market on March 11, 2004. (Def's Ex 2 at 1.) Defendant discovered that Plaintiff had cigarettes for sale that lacked the statutorily required Oregon cigarette tax stamp evidencing prepayment of the cigarette tax as required by ORS 323.160. (Id. at 1-2.) According to the applicable inspection report (#18397) the cigarettes either had no stamp on them or had the stamp of another state. (Id.) Plaintiff was unable to produce invoices for the cigarettes or other tobacco products it had for sale. Defendant seized 629 packs of cigarettes because of the missing Oregon stamps. *Page 2 
Defendant left a warning notice with Plaintiff on that date regarding the violations, and, on April 23, 2004, issued an "official warning for possession of unstamped cigarettes, other state stamped cigarettes, and missing invoices * * *." (Id. at 2.)
Defendant conducted another inspection of Plaintiff's cigarette and tobacco products inventory on April 15, 2004. (Id.) That inspection apparently encompassed both the market and the owner's home and resulted in the seizure of 26 packs of cigarettes that lacked the required Oregon tax stamp. (Id.) Defendant left a warning notice with Plaintiff on that date and, on May 14, 2004, issued an "official warning for possession of other state stamped cigarettes." (Id.)
Defendant conducted a third inspection on May 17, 2004, and seized one package of cigarettes because it did not have an Oregon tax stamp on it. (Id.) Defendant left a warning notice with Plaintiff on that date, and followed up with an official warning for the missing invoices on August 4, 2004. (Id.)
B. Plaintiff's License Applications
Following the third inspection and seizure of cigarettes, Plaintiff applied for a license to sell cigarettes and tobacco products as a distributor and wholesaler. Plaintiff's first application was filed on or about November 2, 2004. (Id. at 3.) Defendant returned that application to Plaintiff that same day, with a cover letter advising Plaintiff that the application was incomplete. (Id.) The letter also advised Plaintiff not to "engage in the business of distributing tobacco products in [Oregon] without a license." (Id.)
Some four months later, on March 16, 2005, Defendant received Plaintiff's resubmitted application, with a copy of Defendant's November 2, 2004, letter regarding the original incomplete application. (Id.) Defendant responded by letter dated April 14, 2006, stating it had made a preliminary determination to deny the license application. (Id.) Several months later, on *Page 3 
July 14, 2006, Defendant received a telephone call from "Pat" asking Defendant to "reinstate" Plaintiff's license application. (Id.) Pat was reportedly advised she would need to submit a new application.
Roughly one week later, on July 20, 2006, Defendant received a new cigarette and tobacco license application from Plaintiff. (Id.) That was Plaintiff's third application for a cigarette and tobacco license. The application was signed by Anita M. Palmer as "owner/CFO." (Def's Ex 1.) That application also listed Arthur J. Palmer and Patricia Montgomery (a.k.a. Pat) as either owners, partners, or shareholders. (Id.)
Shortly thereafter, on August 2, 2006, Defendant conducted an inspection of Plaintiff's tobacco inventory, presumably in response to Plaintiff's latest license application. Defendant's inspector found 50 boxes of "True Blunt" in Plaintiff's inventory. (Id. at 3.) True Blunt, Inc., is not a licensed distributor in Oregon. (Id.) Plaintiff did not have invoices available for that product. The inspector left a warning notice with Plaintiff that was signed by owner Arthur Palmer on August 2, 2006.
C. Defendant's License Application Denial
On October 13, 2006, Defendant issued a letter denying Plaintiff's application for cigarette and tobacco distributor and wholesaler licenses. Defendant's letter states in part as follows:
 "Based upon the evidence presented below [much of which is set forth above by the court] indicating a long and systematic pattern of previous activity constituting significant violations of Oregon Revised Statutes (ORS) 323.482, 323.632, and related statutes, the department believes Dekum will not comply in the future with the provisions of the ORS 323.005 to 323.482 and 323.500 to 323.640."
(Def's Ex 2 at 1) (emphasis added). *Page 4 
D. Plaintiff's Tax Court Appeal
Plaintiff appealed Defendant's license application denial to this court, asserting it had "been denied due process of law, by inaccuracies and falsehood," and requesting that the court "grant * * * it's (sic.) license as it Seems fit." (Ptf's Amended Compl at 1.) Defendant asks that the court deny Plaintiff's complaint and uphold its decision to deny Plaintiff the distributor and wholesaler licenses, asserting that, based on the court's earlier order on the scope of review, its decision to deny Plaintiff's application was not an abuse of discretion.
 II. ANALYSIS
A. Scope of Review — Abuse of Discretion
On September 5, 2007, the court issued an order concluding that the court's scope of review was for an abuse of discretion, rather thande novo, because Defendant's decision to deny the application for cigarette and other tobacco products distributor and wholesaler's licenses involved a discretionary decision. That order is incorporated herein by this reference, and shall guide the court's review of Defendant's denial of Plaintiff's license application.
Accordingly, the court reviews Defendant's action only to determine if Defendant acted in an "arbitrary, capricious or wrongful manner[,]"Perkins and Wiley v. Dept. of Rev., 13 OTR 426, 428 (1995) (citingCorvallis Country Club v. Dept. of Rev., 10 OTR 302, 307 (1986)), or if Defendant has made a decision that is "clearly wrong." Martin Bros. v.Tax Commission, 252 Or 331, 338, 449 P2d 430 (1969) (citingRichardson v. Neuner, 183 Or 558, 564, 194 P2d 989 (1948)). Or, as stated in Pratum Co-Op Whse. v. Dept. of Rev., 6 OTR 130, 134 (1975), "when discretion has been vested in an administrative officer, the court will confine its review of the officer's action to consideration whether the officer exercised his discretion judiciously and not capriciously and arrived at no conclusion which was clearly wrong." (Citation omitted.) *Page 5 
B. Applicable Cigarette and Tobacco Tax Laws
Oregon imposes a tax on the distribution of cigarettes under ORS323.030, [2] and on other "tobacco products" under ORS 323.505. Cigarette distributors must prepay the tax prior to selling cigarettes "by purchasing cigarette tax stamps * * * and affixing those stamps to the unstamped packages of cigarettes." ORS 323.068. ORS 323.160 requires that a tax stamp be affixed to each package of cigarettes prior to distribution. The tax on other tobacco products (e.g., cigars, snuff, and chewing tobacco) must be collected by the distributor at the time of sale and paid over to the Department of Revenue (department) at quarterly intervals each year, accompanied by a return reporting certain required sales and tax collection activities. ORS 323.505 (providing for the tax on the sale) and ORS 323.510 (requiring submission of a return and payment of tax to the department). Also, distributors and others "dealing in, transporting or storing cigarettes in this state shall keep, on the premises, receipts, invoices and other pertinent records related to cigarette transactions, transportation or storage, in such form as the Department of Revenue may require." ORS 323.220. ORS 323.540
imposes the same recordkeeping requirements on distributors of other tobacco products.
A person who sells cigarettes at the retail level is a "distributor." ORS 323.015(2). A "wholesaler" is a person who sells cigarettes to other dealers. ORS 323.010(17). Distributors of cigarettes and other tobacco products must apply for and receive a license from the department in order to sell those products. ORS 323.105 (requiring license for sale of cigarettes) and ORS 323.520 (requiring license for sale of other tobacco products). Cigarette wholesalers must also have a license to engage in the sale of cigarettes to other dealers. ORS 323.107 (requiring wholesalers to have a license). It is unlawful to sell cigarettes or other tobacco products as a *Page 6 
distributor or wholesaler without the required license. ORS 323.105(3) (prohibiting the sale of cigarettes by a distributor without the license); ORS 323.107(3) (prohibiting sales by unlicensed wholesalers).
C. Plaintiff's Cigarette and Tobacco Products Sales Activities
Plaintiff was repeatedly discovered selling untaxed cigarettes without a license in violation of ORS 323.105 and ORS 323.520. In fact, Plaintiff did not apply for such a license until it had been issued at least three citations. Moreover, Plaintiff was found on at least one occasion to not have available on the premises the statutorily required records, in violation of ORS 323.220 and 323.540. Plaintiff has apparently engaged in the sale of cigarettes for several years without paying the tax to Oregon, in violation of ORS 323.160 and ORS 323.510. Defendant determined that those violations warranted denial of Plaintiff's license applications.
In its license denial letter, Defendant states:
 "In each of the inspections by department employees described above, Dekum qualifies as a distributor, or one who has distributed, as defined in ORS 323.015. Regarding the cigarettes seized, Oregon cigarette tax was required to be prepaid as evidenced by the application of an Oregon cigarette tax stamp on each package. The inspection reports in each incident described above shows repeated violations of ORS 323.030, 323.068, and 323.160 by Dekum. Further, it is unlawful to distribute cigarettes in Oregon without a license. The evidence above shows Dekum was distributing cigarettes without a license in violation of ORS 323.105.
 "When the inspections were conducted invoices were requested for cigarettes at the store and they were not available. Oregon law requires all invoices for cigarette transactions be retained on the premises for up to 5 years. The inspection reports in each incident described above shows repeated violations of ORS 323.220.
 "After the first inspection Dekum was aware of the Oregon cigarette law discussed in the preceding paragraphs. Therefore, Dekum knowingly violated Oregon cigarette laws and committed the offense of unlawful distribution under ORS 323.482."
(Def's Ex 2 at 3-5.) (Emphasis in original.) *Page 7 
The denial letter contains a similar recitation of Dekum's violations of various tobacco products (as opposed to cigarettes) laws.
D. Did Defendant Abuse Its Discretion?
As indicated above, the sale of cigarettes is heavily regulated by the state, including the state's tax code. Defendant oversees the licensing of distributors and wholesalers to ensure, among other things, payment of the tax.
ORS 323.130(2) governs the Department's review of a would-be distributor's application for a license to sell cigarettes and provides:
 "The department may not issue a license to an applicant if the department determines or has reason to believe that the applicant will not comply with the provisions of ORS 323.005 to 323.482 or any other state or federal cigarette tax law."
ORS 323.530 governs the department's review of applications to sell tobacco products other than cigarettes. The language of ORS 323.530 is nearly identical to that of ORS 323.130(2).[3] Each requires a prediction of future behavior.
To aid in its decision of whether to grant or deny a license, the department has promulgated administrative rules that list factors to be considered in evaluating an applicant's license application. There are two such rules, one applicable to cigarette license applications (wholesaler and distributor) and another for other tobacco products. The criteria is identical in both rules. The list, while not inclusive, describes three situations warranting denial: prior *Page 8 
failures to pay a tobacco tax, prior criminal conduct under ORS chapter 323, and other applicant violations of ORS chapter 323. OAR 150-323.130(1)[4] and OAR 150-323.530(1).
Plaintiff's prior behavior falls within all three situations set forth in the rule. In other words, Plaintiff has transgressed all three of the alternative grounds for license denial by failing to pay a tobacco tax, engaging in criminal conduct by selling untaxed cigarettes, and generally violating provisions of ORS chapter 323. Plaintiff sold cigarettes without a license, did not remit the tax to the state, and did not keep the records it was required to store on the premises. It is difficult to imagine what more Plaintiff could have done to violate the State's cigarette and tobacco tax laws, except perhaps to have sold cigarettes to minors. See e.g. ORS 323.703 (prohibiting certain tobacco sales to persons under the legal minimum purchase age). Defendant's determination to deny Plaintiff's license application was not arbitrary, capricious, or clearly wrong, standards set forth in Perkins andWiley and Martin Bros., as discussed above. Accordingly, Defendant did not abuse its discretion in denying that application.
A person who knowingly sells or distributes cigarettes or other tobacco products in violation of the applicable cigarette and other tobacco products tax laws commits a crime classified as either a misdemeanor or a felony depending upon the number of cigarettes involved or tax avoided. ORS 323.482 (pertaining to cigarettes) and ORS 323.632
(pertaining to other tobacco products). The court mentions the criminal aspect only to demonstrate the legislature's conviction in seeing that the tax laws relating to cigarettes and other tobacco products are obeyed. *Page 9 
 III. CONCLUSION
On the facts before it, the court concludes that Defendant did not abuse its discretion in denying Plaintiff's application for distributor licenses for cigarettes and other tobacco products (e.g., cigars), and for a cigarette wholesaler's license. Accordingly, Defendant's Motion for Summary Judgment is granted. Now, therefore,
IT IS THE DECISION OF THIS COURT that Defendant's Motion for Summary Judgment is granted and Plaintiff's appeal denied.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on July 25, 2008.The Court filed and entered this document on July 25, 2008.
[1] Pursuant to the parties' agreement at an October 30, 2007, case management conference, Plaintiff had until March 7, 2008, to file a written response to Defendant's summary judgment motion.
[2] All references to the Oregon Revised Statutes (ORS) are to 2005.
[3] The only difference between the two provisions is that a denial is required under ORS 323.530 if the department believes that there will be a failure to comply with any provision in ORS chapter 323. The statute reads:
 "The department may not issue a license to an applicant if the department determines or has reason to believe that the applicant will not comply with the provisions of ORS chapter 323 or any other state or federal tobacco products tax law."
[4] References to the Oregon Administrative Rules (OAR) are to 2005. *Page 1