IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ROBIN A. WILSON WHITNEY,      )
                                    )
           Plaintiff,                )    TC-MD 120365C
                                      )
      v.                           )
                                      )
DEPARTMENT OF REVENUE,       )
State of Oregon,                  )
                                      )
          Defendant.           )    **DECISION**

Plaintiff appeals Defendant's denial of Plaintiff's request for innocent spouse relief under

ORS 316.369 for tax years 2006 and 2007.  Trial in this matter was held on September 26, 2012.

Plaintiff appeared and testified on her own behalf.  Defendant was represented by Tami Powers,

Auditor, Oregon Department of Revenue.  Plaintiff's Exhibits 1-4 and Defendant's Exhibits A-N

were submitted without objection.

## I.  STATEMENT OF FACTS

The tax years at issue are 2006 and 2007.  Plaintiff and her then husband Dennis Hugie

(Hugie) filed joint personal income tax returns for both years.  The 2006 Oregon return, filed in

September 2007, reported federal adjusted gross income (AGI) of $111,243 and Schedule A

itemized deductions of $44,699, including total unreimbursed employee business expenses of

$30,881.  (Def's Ex A at 1, 5.)  The 2007 return, filed in March 2008, reported federal AGI of

$79,184 and Schedule A itemized deductions of $48,421, including total unreimbursed employee

business expenses of $21,077.   (Def's Ex B at 1, 8.)

Plaintiff married Hugie on November 26, 2004.  (Ptf's Ex 1-A at 1.)  She moved out of

the family home October 12, 2007.  They divorced February 7, 2008.  (*Id*.; *see also* Def's Ex J

at 1.)  The couple filed joint tax returns during the marriage and a joint tax return for 2007 after

the divorce was formalized. (Def's Exs A, B.) Plaintiff testified that she subsequently married Charles Whitney in May 2009.

Approximately three months after Plaintiff and Hugie dissolved their marriage, Defendant, in May 2009, audited Plaintiff and Hugie's 2006 return. (Def's Ex L at 1.) Defendant determined that neither Plaintiff nor Hugie provided substantiation for the unreimbursed employee business expenses. (*Id*.) Consequently, on June 18, 2009, Defendant issued a Notice of Deficiency for 2006, disallowing $28,776 in unreimbursed "employee business expenses" for 2006.[1] (*Id*.; Def's Ex D at 2.)

During that same time period, Defendant reviewed the 2007 return and again found no substantiation for the unreimbursed employee business expenses. Consequently, on July 21, 2009, Defendant issued a Notice of Deficiency for 2007, disallowing $19,643 in unreimbursed "employee business expenses."[2] (Def's Ex E at 1, 3.) Plaintiff and Hugie appealed Defendant's 2006 and 2007 deficiencies and Defendant issued a conference decision January 20, 2010 sustaining the auditor's adjustments due to lack of substantiation. (Def's Ex F at 3.) Defendant issued assessments with that decision. (*Id*.)

Plaintiff sent Defendant a written request for innocent spouse relief dated January 22, 2010. (Def's Ex H; Ptf's Ex 1-A.) Plaintiff included the following statements in that written request:

/ / /

---

[1] Although the Notice of Deficiency states that "[y]our employee business expenses in the amount of $28,776 have been disallowed []" due to lack of substantiation, that figure is actually the total amount of "Job Expenses and Certain Miscellaneous Deductions" reported by Plaintiff and Hugie on their 2006 federal Schedule A. The Schedule A reports $30,881 in employee business expenses, $120 in "other expenses," and a $2,225 subtraction for the two percent of federal AGI limitation. (Def's Ex A at 5.)

[2] As with Defendant's 2006 deficiency, Defendant again disallowed the total adjusted amount of job and other miscellaneous deductions reported on Plaintiff and Hugie's 2007 federal Schedule A. (Def's Ex E at 1, 3.)

"[Hugie] gave the list of his write-offs to our Tax Preparer. I did tell him that he had to have receipts to back up the list he gave the Tax Preparer and he said he did.

"I knew he was gone a lot with his job as Roofing Sales Rep. with Home Depot at Home Services. The car he used a 2004 Ford Taurus, was used mostly for that purpose. It made sense he had a lot of miles, expenses, etc. I had my own car(s) in my own name, for my use, and I didn't even drive the 2004 Ford Taurus.

"* * * When we divorced I made copies of our Taxes which we had filed together and gave him the copies. I kept the originals with my W-2's etc. I didn't have his receipts. * * *.

"* * * I have already been taken advantage of by Dennis Hugie and should not be subjected to anymore of his lack of financial responsibility, dishonesty, and disregard for personal integrity.

"When we filed the Taxes for 2007, we agreed the Refund would all go to me since he still owed me money from the Divorce. We opened a joint savings account (since the refund was in both names), just for the Electronic Refund. On the morning that the Refund went into the Savings Account Dennis called me and said it was in and that he'd taken half of the refund. I argued with him that the agreement was that I would get the full return to help pay part of what he owed me. He said he changed his mind and I never got that money."

(Def's Ex H at 2; Ptf's Ex 1-A at 2.)

Plaintiff also filled out a questionnaire as part of the request for innocent spouse relief. (Def's Ex I at 3-6.) Plaintiff stated in that questionnaire that, for 2006, she "gathered [her] paperwork asked Dennis for his 2006 – I took it to Debbie Yeack – Tax Preparer." (*Id.* at 3.) Referring to 2007, Plaintiff wrote that "[i]f I remember correctly Dennis drove the info to Debbie Yeack – we were divorced – I just worked w/Debbie over the phone." (*Id.*) Elsewhere in that questionnaire, in response to a question about whether there was discussion about the completed returns, Plaintiff wrote that for both 2006 and 2007 she "remember[d] telling [Hugie] that he needed receipts for all of his write-offs," and that Hugie "gave me and the Tax Preparer a handwritten list of his expenses and totals." (*Id.*)

/ / /

Defendant issued a decision denying Plaintiff's request for innocent spouse relief February 6, 2012. (Def's Ex L at 1-2.) Defendant explains in its conference decision letter (CDL) that "[i]t was agreed that the EBE a for both tax years was due to Dennis' job. No substantiation was provided at the time of the conference so a Notice of Deficiency Assessment was issued for each tax year on January 20, 2010." (Def's Ex L at 1.) Defendant's CDL further explains that:

> "[o]ne of the basic requirements for any relief is that you had no actual knowledge at the time you signed the return of the item that gave rise to the deficiencies. In your questionnaire you stated that you took the information to the tax preparer for tax year 2006 and, to the best of your recollection, Dennis took it in to her for tax year 2007. You also stated that Dennis gave you and the preparer a handwritten list of his expenses and you told him that he required receipts for all of his 'write-offs'. Because you were aware that the tax returns were filed without the substantiation which you knew was required in order to deduct the EBE, your request for innocent spouse relief * * * must be denied."

(*Id.* at 1-2.)

Plaintiff timely appealed Defendant's denial of her request for innocent spouse relief for tax years 2006 and 2007. Defendant filed an Answer disagreeing that Plaintiff qualified for innocent spouse relief. Defendant further indicated in its Answer that "no adjustment has been made to the plaintiff's 2006 or 2007 federal income tax return by the Internal Revenue Service." (Def's Ans at 1.)

During the trial, Plaintiff testified that she participated in the tax planning. She delivered the 2006 tax receipts to the couple's tax preparer. (Ptf's Ex 1 at ii.)[3] Hugie delivered the 2007 receipts to the tax preparer. (*Id.*) With regard to the 2007 return, Plaintiff admitted that she told Hugie that "he had to have receipts to back up the list he gave the Tax Preparer * * * and he said 'he did.' " (*Id.*) In her innocent spouse questionnaire, Plaintiff wrote about her role in tending to

---

[3] Plaintiff submitted to the court four unnumbered pages at the beginning of her exhibits that the court will refer to as i, ii, iii, and iv.

household finances: "I made sure things got paid. He would give me some money, usually I had to pay groceries, etc. on my own." (Def's Ex I at 4.)

Plaintiff married Hugie on November 26, 2004. (Ptf's Ex 1-A at 1.) She moved out of the family home October 12, 2007. They divorced February 7, 2008. (*Id.*) The couple filed joint tax returns during the marriage and a joint tax return for 2007 after the divorce was formalized. (Def's Exs A, B.) Plaintiff filed for innocent spouse relief on January 22, 2010. (Def's Ex H 1-2.)

A few other facts are relevant. Plaintiff worked as a loan officer during the years at issue. Hugie traveled frequently for his employer, Home Depot, selling roofs.[4] Additionally, Hugie's 2006 wages were only $43,647 (rounded) and his 2007 wages were $50,935 (rounded), compared to reported employee business expenses of $30,881 for 2006 and $21,077 for 2007. (Def's Ex A at 5; B at 8.)

## II. ANALYSIS

When the court reviews a decision made by the Department of Revenue under ORS 316.369,[5] the standard of review is whether the department abused its discretion in reaching its decision. *Abbott v. Dept. of Rev.*, TC-MD 080943D at 3 (Nov 13, 2008). "This court cannot substitute its judgment for [that of the] Defendant's judgment." (*Id.*) Abuse of discretion is determined by analyzing whether the department "acted 'capriciously or arrived at a conclusion which was clearly wrong.' " in its determination. *See Eyler v. Dept. of Rev.*, 14 OTR 160, 162 (1997) (citations omitted).

---

[4] That information came from Plaintiff's trial testimony. The court is not clear whether Hugie sold roofing materials or package arrangements that included materials and installation, or whether he approached individuals or other businesses. However, for purposes of this decision, that information is not necessary.

[5] Unless otherwise specified, all references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to the 2005 editions.

"The rule is well established that where discretion has been vested in an administrative officer by the legislature, the court's view of the officer's actions must be confined to the consideration of whether or not the officer exercised his discretion judiciously rather than capriciously and did not arrive at a conclusion that was clearly wrong." *Jim Fisher Motors, Inc. v. Dept. of Rev.*, 7 OTR 90, 93-94 (1977) (citing *Pratum Co-Op Whse. v. Dept. of Rev.*, 6 OTR 130 (1975)).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. *The burden of proof shall fall upon the party seeking affirmative relief * * *.*" ORS 305.427 (2011) (emphasis added). Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

Plaintiff married Hugie on November 26, 2004. (Ptf's Ex 1-A at 1.) She moved out of the family home October 12, 2007. They divorced February 7, 2008. (*Id.*) The couple filed joint tax returns during the marriage and a joint tax return for 2007 after the divorce was formalized. (Def's Exs A, B.) Plaintiff filed for innocent spouse relief on January 22, 2010. (Def's Ex H 1-2.)

Plaintiff testified that she participated in tax planning. She delivered the 2006 tax receipts to the couple's tax preparer. (Ptf's Ex 1 at ii.) Hugie delivered the 2007 receipts to the tax preparer. (*Id.*) With regards to the 2007 return, Plaintiff admitted that she told Hugie that "he had to have receipts to back up the list he gave the Tax Preparer * * * and he said 'he did.' " (*Id.*)

/ / /

ORS 316.369 provides in pertinent part that a spouse may be relieved from joint liability on a jointly filed tax return under certain circumstances:

> "If a joint return has been made under this chapter for a tax year, a spouse shall be relieved of liability for tax, including interest, penalties and other amounts, for the tax year:

> "(1) If the Internal Revenue Service has made a determination that relieved the spouse of liability for federal taxes for the same tax year under Internal Revenue Code provisions that provide for spouse relief from liability; or

> "(2) If the Internal Revenue Service has not made a determination that relieved the spouse of liability for the tax year, but *the spouse qualifies* to be relieved of state tax liability *under rules adopted by the Department of Revenue.* In adopting rules under this subsection, the department shall consider the provisions of the Internal Revenue Code and regulations issued thereunder that provide for spouse relief from liability for federal taxes."

(Emphasis added.)

Plaintiff was not relieved of her federal tax liability by the Internal Revenue Service (IRS). Thus, in order to prevail, Plaintiff must satisfy the requirements of subsection (2) of ORS 316.369, which point largely to the "rules adopted by the Department of Revenue."

The rule guiding Plaintiff's claim for relief is OAR 150-316.369, which reads, in part:

> "(4) Innocent Spouse. Innocent spouse relief is available only for deficiencies or assessed deficiencies. This provision does not authorize relief from liabilities that taxpayers reported properly on the joint return but did not pay. If the following four conditions are met, the individual will qualify for innocent spouse relief. The department will relieve the individual of state liability for tax in whole or in part (including interest, penalties, and other amounts) for the taxable year.

> "(a) Conditions:

> "(A) The requesting spouse filed a joint return for the taxable year for which relief is sought;

> "(B) On such return there is an understatement of tax attributable to erroneous items of the spouse with whom the requesting spouse filed the return;

> "(C) The requesting spouse establishes that he or she *did not know, and had no reason to know*, of the understatement when signing the return;

"(D) Taking into account all of the facts and circumstances, it is unreasonable in the department's judgment to hold the requesting spouse liable for the deficiency attributable to the understatement."

(Emphasis added.)

The first of the four conditions in the Department's rule is clearly satisfied; Plaintiff and Hugie filed joint returns for the years at issue. It appears that the second of the four conditions is met (there was an understatement of tax attributable to erroneous items on the returns). At least Defendant felt that was the situation. Plaintiff's position is difficult to ascertain because in the proceeding below, which is the one that matters, Plaintiff took the position that she believed the expenses reported were appropriate because Hugie traveled frequently for work, using his personal vehicle, thereby incurring business expenses for which he was apparently not reimbursed. It was then, and remains, Plaintiff's position that Hugie should be responsible because he is the one that actually "claimed" the amount of expenses reported.

The court's focus is on the third of the four conditions in the Department's rule set forth above, which requires that the taxpayer requesting innocent spouse relief established that she had no knowledge, or reason to know, that there was an understatement of tax on the return due to an erroneously reported item, which in this case is unreimbursed employee expenses. Also, as explained above, the standard of review in an appeal from a discretionary decision denying innocent spouse relief is abuse of discretion, which is a fairly low bar for Defendant to clear in order for the court to determine its decision should not be overturned. The court must merely determine that Defendant did not act "capriciously" or arrive at a conclusion that was "clearly wrong." *Eyler*, 14 OTR at 162; *Jim Fisher Motors,* 7 OTR at 93-94 (citations omitted).

Defendant's decision denying Plaintiff's request for innocent spouse relief was based largely on the third of the four factors set forth above, Defendant determining that Plaintiff was

"aware that the tax returns were filed without the substantiation which [Plaintiff] knew was required in order to deduct the [disputed expenses]." (Def's Ex L at 2.)

Plaintiff argued that she should be relieved from joint liability because it was Hugie's failure to properly report the disputed items that formed the basis for the deductions. She further argued that Hugie is the one who has failed to produce the receipts and that either he or his employer should have the appropriate records; that she was unable to get them from either of those parties. Plaintiff further argued that, at the time the returns were signed and submitted, she believed that the disputed expenses attributable to Hugie's work were validly reported because he regularly used his personal vehicle, a Ford Taurus, selling roofs for Home Depot.

In her innocent spouse questionnaire, Plaintiff wrote that she informed her spouse that he needed to "have receipts to back up the list he gave the Tax Preparer and he said he did." (Def's Ex H at 2.) Plaintiff further acknowledged in that questionnaire that she gathered her paperwork for 2006 and asked Hugie for his before taking it to their tax preparer. In her innocent spouse questionnaire, Plaintiff wrote about her involvement with the couple's tax preparation as follows: "2006: I gathered my paperwork asked Dennis for his 2006 – I took it to Debbie Yeack – Tax Preparer. 2007: If I remember correctly Dennis drove the info to Debbie Yeack * * *[.] (Def's Ex I at 3.)

Unfortunately for Plaintiff, she misinterprets the mental state required by OAR 150-316.369(4)(C). It is more than actual knowledge of the amount of the item. OAR 150-316.369(4) models Internal Revenue Code section 6015(b)(1) and Treasury Regulation section 1.6015-2. It states, in pertinent part:

> "A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement, or *if a reasonable person in similar circumstances would have known of the understatement*. For rules relating to a requesting spouse's actual knowledge, *see* § 1.6015-3(c)(2). All of the facts and

circumstances are considered in determining whether a requesting spouse had reason to know of an understatement. The facts and circumstances that are considered include, but are not limited to, the nature of the erroneous item and the amount of the erroneous item relative to other items; the couple's financial situation; the requesting spouse's educational background and business experience; the extent of the requesting spouse's participation in the activity that resulted in the erroneous item; whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question; and whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns (*e.g.*, omitted income from an investment regularly reported on prior years' returns). "

Treas Reg § 1.6015-2(c) (emphasis added).

Viewing Defendant's decision in applying OAR 150-316.369 (4)(a)(C) from an abuse of discretion standpoint, the court does not find Defendant's denial of Plaintiff's innocent spouse request to be improper. Defendant decided that Plaintiff had reason to know that an understatement of tax occurred. Plaintiff wrote in her Innocent Spouse Request submitted to the Defendant: "[Hugie] gave the list of write-offs to our Tax Preparer. I did tell him that he had to have receipts to back up the list he gave the Tax Preparer and he said he did." (Def's Ex H at 2). She wrote in a submission to this court that "Hugie had his own large desk which he kept paperwork, etc. on. * * * He drove all over Oregon for appts. He showed a W-2 from THD At-Home Services, Inc. in 2006 for $43,646.89 and THD At-Home Services, Inc. in 2007 $50,935.48. Plus I knew he had the expenses because he hurt his foot, and I drove him to an appt. on the Oregon Coast and one in Albany, Oregon. We also had our home installed with insulation through him as a THD At-Home Services, Inc. salesman. I paid for this before and after the divorce." (Ptf's Ex 1 at iii.)

Plaintiff admitted making actual inquiries about the sufficiency of documentation that formed the basis for the unreimbursed employee business expenses to both the tax preparer and Hugie. (Ptf's Ex 1 at ii-iv.) The fact that she received dismissive answers from Hugie only

serves to reinforce the requirement of OAR 150-316.369(4) that she should have known of the understatement. Her claim that the tax preparer did not require receipts in order to file the taxes is also unpersuasive. (*Id*. at ii.) It is the duty of every taxpayer to keep the records from which the tax return is based. 26 USC § 6001 (2011). The IRS provides Publication 583 (Starting A Business And Keeping Records) which provide a record keeping notice as follows: "You must keep your business records available at all times for inspection by the IRS. * * *." (Mar 2006 at 11) It is the taxpayer's duty to keep tax records for business expenses for three years, longer under certain circumstances, and be able to provide them to the IRS for inspection at any time during that period. *Id*. at 15.

During the time in question, Plaintiff worked in the banking industry as a loan officer. (Def's Exs I at 5; Ex B at 7.) She admitted having a role in managing the couple's finances. (Def's Ex H at 1-2; Ptf's Ex 1-A at 1-2.) She stated in a sworn deposition to the DOR that she knew her husband incurred business expenses and did not track them, even though their accountant had urged them to do so. (Def's Ex G at 2.) She participated in the activity that formed the basis for some of the unreimbursed employee business expenses when she drove Hugie to appointments. (Ptf's Ex 1 at iii.) She even questioned Hugie and the tax preparer about the record keeping requirements. (*Id*. at ii.) She participated in the management of household finances during the marriage. She participated in tax planning both before and after the divorce. Plaintiff does not meet the requirement of OAR 150-316.369(4)(C) because she should have known that there were erroneous items on the returns, those items that are unsubstantiated, and those items that formed the basis for the unreimbursed employee business expenses. Finally, as Defendant brought out during cross-examination, Hugie's reported unreimbursed expenses in 2006 were $30,881 compared to wages that year of $43,646.89. That fact should have given

Plaintiff reason to question the validity of the amount of expenses Hugie was claiming on their jointly filed 2006 return.

Defendant also denied Plaintiff's claims under OAR 150-316.369(5) (Allocation of Liabilities) and OAR 150-316.369(6) (Equitable Relief). (Def's Exs K at 1-3; Ex L at 1-2.) Both matters were addressed and disposed of based on Plaintiff's knowledge of the erroneous items that formed the basis of the unreimbursed employee business expenses. Plaintiff did not appeal those matters, but the analysis is the same. Accordingly, the court will not address those issues.

### III. CONCLUSION

For the reasons above, this court concludes that Defendant did not abuse its discretion in determining that Plaintiff is not entitled to innocent spouse relief under ORS 316.369 and OAR 150-316.369. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of November 2012.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on November 30, 2012. The Court filed and entered this document on November 30, 2012.*